HEARD APRIL TERM, 1871.

## MASSEY *vs.* DUREN.

Trespass to try title. Plaintiffs claimed all the lands within the lines of a survey and plat made in 1829, which they gave in evidence as their color of title. The lands consisted, before the survey, of two adjoining parcels, having different owners, and plaintiffs claimed to have acquired title since the survey to all the lands within its limits by adverse possession, under an actual occupancy for ten years on one parcel. Defendant claimed the other parcel, but proved neither a paper title nor an actual occupancy for ten years. The presiding Judge charged the jury "that if they find that the plaintiffs or their tenants had held possession on any part of the land claimed by them for the space of ten years after the survey was made, that such possession would extend to the limits of that survey, regarding that survey and the plat produced of the same as color of title indicating the extent of their claim, together with the deeds upon which the survey was made." *Held*, That in this there was error, and new trial ordered.

Occupancy for ten years of one of two adjoining parcels of land included within the lines of a plat held as color of title, *held* not to confer title by adverse possession against the owner of the other parcel.

Title by adverse possession cannot be acquired where no trespass is committed against the owner.

BEFORE THOMAS, J., AT LANCASTER, FEBRUARY TERM, 1870.

This was an action of trespass to try title.

The plaintiffs claimed all the lands included within the lines of a survey and plat of the lands made for them, or those under whom they claimed, in the year 1829, by J. H. Blair, a deputy surveyor.

They consisted, before the survey, of two adjoining parcels of land, one called the Walker tract, and the other the Robinson land: The Walker tract, also, consisted originally of two parcels, one of them being part of a tract granted in 1788 to George Johnson, and conveyed to Andrew Walker in 1796, and the other a tract granted to Walker in 1792. The Robinson land consisted of part of the tract granted in 1788 to George Johnson, and afterwards conveyed to Brice Miller, and of a tract granted in 1794 to Brice Miller. In 1795, Miller conveyed to Jane Robinson.

The plaintiffs gave in evidence a number of deeds and other papers, besides the grants, but failed to prove a paper title in themselves to the Robinson land, which the defendants claimed, and which was the only land in dispute in this action. They relied upon Blair's plat as color of title, and proved an actual occupancy for ten years and upwards upon the tract granted to Walker, and some possession, but not for ten years, upon that part of the tract granted to Johnson, which was within the limits of the tract called the Walker tract.

The defendants failed to prove a paper title in themselves to the Robinson land, and their evidence to prove title by adverse possession was entirely insufficient.

The case was heard in this Court upon a report of his Honor the presiding Judge, which concluded as follows:

"Defendant's counsel on the trial requested that I should charge the jury that actual *pedis possessio* by the plaintiffs or their tenants, or the tenants of some of the parties under whom they claim, *on the Robinson land,* was necessary to entitle the plaintiffs to recover that land.

"I considered, and so instructed the jury, that if they find that the plaintiffs or their tenants had held possession on any part of the land claimed by them for the space of ten years after the Blair survey was made, that such possession would extend to the limits of that survey, regarding that survey and the plat produced of the same, as color of title indicating the extent of their claim, together with the deeds aforenamed upon which the survey was made.

"The jury found a verdict covering all the lands embraced in the Blair survey, the George Johnson grant, the Walker grant and the Brice Miller grant, referred to in this case.

"The defendants moved before me for a new trial upon the grounds annexed to this statement, but, being satisfied with the finding of the jury, I refused the motion."

The defendants appealed, and now moved this Court for a new trial, on the grounds:

1. Because it is respectfully submitted his Honor should have charged the jury, as requested by defendant's counsel, that actual *pedis possessio* by the plaintiffs or their tenants, or the tenants of some of the parties under whom they claim, on the Robinson land, was necessary to entitle the plaintiffs to recover that land.

2. Because the only possession proven on the part of the plaintiffs was on the George Johnson grant and the Walker grant, and none whatever on the Brice Miller grant; and the plaintiffs proved title only to the Walker land and part of the George Johnson grant, and none whatever to the Brice Miller grant, and the jury erred in finding the last named land for the plaintiffs.

3. Because the proof was that the Robinsons and the defendants were the only persons ever in possession of the Brice Miller grant, and the said grant is called for as the Robinson land in the deed of William McKenna produced as part of plaintiffs' chain of title, and the jury erred in finding said land for the plaintiffs.

4. Because defendant, since the finding of the jury, has discovered convincing evidence that there never was any tenancy or possession by the plaintiffs or their tenants, on the Robinson land, before the year 1853, and the tenancy or possession by them, after the year 1853, was only for two or three years, and could not, in any event, confer upon them title to said land.

5. Because the verdict of the jury was contrary to the evidence adduced on the trial.

*Allison, Kershaw,* for appellants:

The plaintiffs, as the heirs of one Thos. and Jane Massey, claimed the land in dispute by adverse possession, relying on the mass of paper testimony as affording them color of title.

Defendant, Wylie R. Duren, claimed for his infant son, Thos. R. Duren, under Brice Miller, under deed of said Miller to one Jane Robinson, of date 1st December, 1795, and for color of title he relied on power of attorney and deed in pursuance thereof from one Wm. Robinson, heir of Jane Robinson, to Thos. R. Duren, dated in 1858. Copy grant to Brice Miller of date 24th September, 1794, embraces (as we contend) a portion of this land. Deed from Vickory to Miller bears date 14th December, 1792, and deed from Miller to Walker 25th January, 1796. Duren's house is outside the George Johnson grant, but within the Brice Miller grant, and

also outside of the Walker grant. The location of the Robinson land includes the whole of the Brice Miller Grant and the George Johnson grant. The Circuit Judge declined to charge the jury that actual *pedis possessio* by the plaintiffs, or their tenants, on the Robinson land, was necessary to entitle the plaintiffs to recover that land, but charged that if they find that the plaintiffs, or their tenants, had held possession on any part of the land claimed by them for ten years after the Blair survey was made, that such possession would extend to the limits of that survey; regarding that survey, and the plat produced of the same, as color of title, together with the deeds upon which the survey was made. Plat of survey by J. H. Blair made in 1829. It is not pretended that the George Johnson and Walker grants cover the whole of the Robinson lands.

He who goes into possession of land, under a contract to purchase, holds adversely to all the world, except him from whom he bought.—*Bank* vs. *Smyers*, 2 Strob., 28.

Possession of a part under any of the titles, affording color, is a legal possession of only the whole comprehended within that title.—1 N. & McC. Rep., 374.

To acquire title by possession against a grant, there must be actual *pedis possessio* within the limits of the grant for ten years; a constructive possession arising from an actual possession outside of its limits is not sufficient.—*Slice* vs. *Derrick*, 2 Rich., 629.

There can be no constructive adverse possession of land against the owner where there has been no actual possession which he could treat as a trespass, and bring action for, and when a tract of land within the limits of three separate grants, was adversely held against the eldest grantee—held that the possession could not be extended by construction to land outside the limits of the eldest grant.—*Steedman* vs. *Hilliard*, 3 Rich., 103.

*Moore*, for respondents:

I. Plaintiff's possession actually commenced in 1816. The limits of the possession were defined by the Blair survey made for their ancestor July the 11th, 1829, and included the Walker, the Johnson and the Brice Miller grants, resurveyed again when he became the exclusive owner under the four deeds of the Commissioner in Equity, made 1st November, 1842.

But conceding that their possession did not commence until the

Blair survey in 1829, their thirty years' possession from that time would be more than sufficient to raise the presumption of a grant, or of any intermediate conveyances of the land embraced in the plat.— *Gray* vs. *Bates,* 3 Strob., 500.

II. The defendant does not pretend that he has any title, and utterly failed even to locate the Jane Robinson deed under which he endeavored to take shelter upon any portion of the land claimed by plaintiffs.

III. Without the aid of legal presumptions the plaintiffs showed a chain of title to the Walker and Johnson grants, but because they were unable to show a similar chain of paper title to the Brice Miller, nearly the whole of which is however covered by the location of the Walker grant, by Blair in 1829, the defendant relying upon the principle decided in the cases of *Slice* vs. *Derrick,* 2 Rich., 629, and *Steedman* vs. *Hilliard,* 3 Rich., 103, seeks protection under the Brice Miller grant, as to that portion of the land upon which the trespass was committed lying outside of the George Johnson grant.

But the principle decided in those cases do not apply here.

1st. Because, in the language of the Report itself: "there was also some possession by tenants of the plaintiffs on the George Johnson grant in the field now cultivated by the defendant Duren, according to the proof, for several years." Now a glance at the plat of survey in this case will show that a large part of this field is outside of the George Johnson and within the Miller grant, the house in which the tenants lived being within the latter (the Miller) and outside of the former.

2d. Because in the case of *Slice* vs. *Derrick,* the Court intimates what was afterward, in the case of *Gray* vs. *Bates,* clearly decided, that twenty years' possession under a plat covering the "*locus in quo,*" as well as the *possessio pedis,* would raise the presumption of a deed co-extensive with the plat.

3d. Because, in the cases of *Slice* vs. *Derrick,* and *Steedman* vs. *Hilliard,* title was shown in some other besides the party in possession, which was not done in this case.

IV. The question of fact as to the possession of the plaintiffs under title or color of title having been submitted to the jury, this Court will not disturb their verdict, the more especially as it was approved of by the presiding Judge.

V. Plaintiff's constructive possession good, at all events, against every person except Brice Miller, or one proving title from him.— *Bank* vs. *Smyers,* 2 Strob., 28; *Crosby* vs. *Floyd,* 2 Bail.,

116; *Giles* vs. *Pratt*, 2 Hill, 439; *Goudelock* vs. *Massey*, 2 Strob., 188.

Aug. 29, 1871.   The opinion of the Court was delivered by

WILLARD, A. J.   The appellant seeks to set aside a verdict for the plaintiffs in an action of trespass to try titles.   The only exception before us brings up the question of a mis-direction of the jury by the Circuit Judge.

The land claimed as held by the defendant is described as the Robinson tract.   The plaintiffs proved possession by actual occupancy of a tract described as the Walker tract, adjoining the former.   Plaintiffs also offered proof of temporary possession by their tenants of a part of the Robinson tract; but neither the time of its commencement, its duration, the nature of such possession, nor the designation of the part or portion of the Robinson tract where such possession was had, is in proof as the case is presented to us.   The plaintiffs also proved a survey made in 1829, claiming such survey to be in conformity with the deeds set forth as their title, and as in effect an assertion of title in their behalf, sufficient to refer their actual possession of part of the whole tract embraced in such survey.   The survey embraced the Walker tract and the greater part of the Robinson tract.   All that is disclosed in regard to their survey is contained in the following language " the larger square represented in said plat, and marked by *black lines*, indicates the lines of a survey of the Walker grant made by J. H. Blair in 1829," and a mere allusion to such survey, still less definite, in another part of the report.   The Circuit Judge charged the jury that if they find that the plaintiffs or their tenants had held possession of any part of the land claimed by them for the space of ten years after the Blair survey was made, that such possession would extend to the limits of that survey, regarding that survey and the plat produced of the same as color of title, indicating the extent of their claim; together with the deeds aforenamed upon which the same was made."

Under this charge the jury could not do otherwise than find a verdict for the plaintiffs for the whole tract embraced in the Blair survey, for the possession by the plaintiffs of the Walker tract, part of the lands embraced in such survey, was undisputed.   The charge enabled the plaintiffs to obtain a verdict without reference to their paper title and solely on the strength of their adverse possession.

The evidence of possession within the tract claimed and held by

the defendant was not of that full, clear and undisputed character that could warrant a direction by the Judge, virtually dispensing with the functions of the jury. If the charge can be supported, it must be by the fact of the possession by the plaintiffs of a tract of land over which the defendant makes no claim. This brings the case distinctly within the point ruled in *Steedman* vs. *Hilliard*, 8 Rich., 101. It was there decided that to make a possession adverse, it must be of that which is claimed by one against whom it is alleged as adverse, or, in other words, that he who has an adverse possession, must stand as a trespasser until his possession is ripened into a title by lapse of time, as against all parties bound by such adverse possession. There is no reason to question the correctness of this general proposition.

Under the charge it was not necessary for the plaintiffs, in order to obtain a verdict, to make out as matters of fact, that the making of the Blair survey was an act of trespass on their part that exposed them to an action by the defendant, assuming him to have title. The charge treats the survey, exclusively, as an act of assertion on the part of plaintiffs, declaratory of the extent of their claim, and not as a dealing with the soil by way of entering upon it, running lines, marking trees, and establishing monuments.

The charge cannot be supported by any argumentative attempt to establish the fact of making the survey as an act of trespass on the part of the plaintiffs. But if such a line of argument could be resorted to, it would not avail, for upon the evidence that fact could only be made out by a verdict. If it appears at all that the survey was the act of the plaintiffs, or of those whose act the plaintiffs have a right to make available, it is to be made out as an inference from facts proved, and not as a fact receiving distinct proof, and such an inference of fact can only be drawn by the jury.

This charge is clearly a misapplication of the rule stated in *Eiferts* ads. *Read*, (1 N. & M'C., 374, note). It is there said by Judge Smith, with the approbation of the majority of the Judges, as follows: "I am, therefore, of opinion that, on a fair construction of the statute, possession of a part, under any of the titles enumerated in it, is a legal possession of the whole comprehended within that title." He adds also: "but where the occupant has no title in writing to himself or those under whom he claims, I think he ought to be confined to his actual occupancy, because he has no evidence that his claim extends farther." *Eifert* ads. *Read* is a fair instance of the proper limit of the rule there laid down, in the lan-

guage already quoted. In that case the plaintiff claimed, under a senior grant, the land held by the defendant, as part of a larger tract of land conveyed to plaintiff by such senior grant. The defendant relied on adverse possession under color of a junior grant, purporting to convey a portion of the land covered by plaintiff's senior grant. Defendant could only establish possession by actual occupancy (*pedis possesio*) as to a part of the land embraced in his grant, and the question was, whether under color of his grant such actual occupancy of a part was a sufficient possession of the whole embraced in his grant for the purpose of making title by adverse possession. It did not appear, as a fact in the case, that the plaintiff had exercised any actual occupancy within the limits of the defendant's grant during the period the latter had held adversely to the plaintiff. There was no question of conflicting occupancy in the case, although there clearly was a question of conflicting possession. Now, it is to be presumed that the plaintiff had possession by actual occupancy, within the limits of his grant, though outside the limits of defendant's grant. If the rule laid down in *Eifert* ads. *Read* admitted of no exceptions, plaintiff in that case being in possession of the land embraced in the senior grant, by the actual occupancy of part, was in fact and in law in possession of the whole, even of that part of which defendant had possession by actual adverse occupancy. There would have been a manifest absurdity—an actual possession in the plaintiff through the operation of the rule, and at the same time and place an adverse possession by the defendant, the nature of which latter possession excludes the idea of any other possession. It shows very clearly that the kind of possession which results under the application of the rule, gives way before an actual adverse occupancy, precisely as the presumption of a fact gives way to the actual proof of such fact. But *Eifert* ads. *Read* goes a step beyond, holding that the rule that possession of part held under color of title is possession of the whole held according to such color of title, gives away as against such actual adverse occupancy. It still further limits the operation of that rule in its favorable effect upon the plaintiff's rights, allowing such adverse occupancy to operate in favor of the defendant beyond the place where it was actually exercised, and still further by allowing the sphere within which such adverse occupancy should act by way of displacing all other possessions to be defined by the very rule in question. So that not only did the rule cease to operate in favor of the plaintiff when the occupancy

of the defendant begun, but it actually operated from that time in favor of the defendant based on the fact of such adverse occupancy.

It might have been argued in that case, as to the land included in defendant's grant, but not actually occupied by him, that, as defendant's claim to possession at that point was merely what was ascribed to him by the operation of a rule of law, it was no better than the plaintiff's claim to possession at the same place, for that was also ascribed to him by the same rule of law. Both had actual occupancy, under the terms of grant, of part of the thing granted, and both were, therefore, within the rule, and, such being the case, the plaintiff ought to prevail by the strength of better title. The conclusion of the Court, in that case, in favor of the defendant's claim to possession, outside of his actual occupancy, appears to be in harmony with the idea advanced in *Steedman* vs. *Hilliard*. It was not the mere fact of occupancy, but the fact that such occupancy was adverse, that was decisive of the point. The plaintiff's occupancy, in *Eiferth* ads. *Read*, was not adverse to the defendant, for the defendant made no claim where it was exercised, but on the other hand the defendant's occupancy was adverse to the plaintiff's claim, and this constituted the difference. The rule in its operation gave way before an adverse occupancy; it ceased to operate in favor of the plaintiff, and began to operate against him on the new basis of right involved in defendant's claim, as enforced by the adverse character of his occupancy. But suppose that it had appeared in *Eiferth* ads. *Read*, that during the time defendant claimed under the operation of the rule to have had possession up to the limits of his grant, the plaintiff had exercised actual occupancy within such limits, would the Court have established the defendant's right under the operation of the rule over the very land actually occupied by the plaintiff, and against his superior title? Clearly not; the union of the better title, with the fact of actual occupancy, would have precluded such a result.

The case before the Court is very similar, though not identical, with the one just supposed. Had the defendant here made title, clear and undisputed, to that portion of the land claimed and actually occupied by him, the case would have been strictly parallel.

Although, for the purpose of inquiring into the correctness of the charge, the plaintiff must be regarded as relying on adverse possession merely, yet it cannot be assumed that the defendant has a paper title as against such claim. For the purpose of the present question, we must consider both as resting on possessory titles.

Now it is clear that the possession of the defendant is adverse to that of the plaintiff; but so far as the occupancy of the Walker lot is concerned, the plaintiff's possession is not adverse to the defendant, for the defendant makes no claim there. It does not yet appear whether defendant's title, by adverse possession, is complete by lapse of time—for that fact could only be ascertained by a verdict, and under the charge the jury cannot be assumed to have rendered a verdict on that question — but whether defendant's title, so far as it depends on possession, is choate or inchoate, the character of his possession is adverse, and the rule that possession of part is possession of the whole is operating in his favor and against the plaintiff, within the limits of his color of title, and will continue so to operate until the relations of the parties become changed, either as matters of fact or by operation of law. But on the other hand no such operation of the rule results in favor of the plaintiff as it regards the possession of the Walker tract, for, as we have seen, it is not adverse to any claim of defendant. Had the Circuit Judge confined himself to laying down as an abstract proposition of law, the rule that possession of part of the land held under color of title is possession of the whole, it could not be successfully alleged that he had misstated the law. In that case, if the defendant had deemed it essential to his case, that the proposition thus laid down in general terms should be limited by excepting from its operation a case where there was an actual adverse occupancy within the limits of the color of title, it would have devolved upon him to bring such limitation to the attention of the Court, in order to make ground for an exception by a refusal to charge.

But that was not the form of the charge. The Judge assumed to define the rights of the plaintiffs under the general rule above stated, and if he deduced those rights without regard to a limitation or exception to which the general rule, in its application to the facts of the case, was subject, the direction itself became erroneous, and advantage could be taken of it, by an exception to the charge, without superadding a request to charge embracing the terms of the limitation or exception contended for.

The only issue opened to the jury by the charge was, had the plaintiff held possession of any part of the land embraced within his color of title for a period of ten years? The charge then proceeds to declare the consequences in point of law of a finding for the plaintiffs upon such issue of fact, namely, that such possession would ex-

tend to the limits of the survey, or, in other words, that the plaintiffs would stand in the same legal position as if they had held a complete and exclusive *dispossessio* of the whole tract during such period of ten years. This cannot be the law of the case, unless it takes into account, not only the general rule of law bearing on it, but such limitations and exceptions as, under the facts, the general rule is subject to in such case.

It had appeared that the defendant had, for some length of time not ascertained, held some portion of the land within the limits of plaintiffs' color of title, by an actual adverse occupancy, and as we have seen, the time during which defendant had so held was not to be counted to the plaintiffs as any portion of the ten years that they were compelled to make out; yet the form of the charge was such as to allow the jury to count this very period of adverse occupancy to the plaintiffs as part of their ten years. It is not necessary now to consider the legal bearing of the fact of a temporary possession on the part of plaintiffs within the lands held by defendant, nor of the survey regarded as an act of trespass. We cannot assume that the facts bearing on these questions are fully before us, as they are not necessarily involved in the matter of the exception. Nor do the rulings of the Circuit Judge involve any aspect of the law in its bearing on these questions, so as to become the subject of review in this Court.

The verdict must be set aside and a new trial ordered.

*Wright,* A. J., concurred.

*Moses,* C. J., absent at the hearing.