6714

LOVE v. TURNER.

1. CHARGE.—AN EXCEPTION alleging error in charging on the facts, which fails to specify in what particular the constitutional inhibition is entrenched upon, is too general.

2. IBID.—A hypothetical statement of facts is not a charge on the facts.

3. REAL PROPERTY—ADVERSE POSSESSION.—Under the facts in this case, it was not error to instruct jury that an occasional act of ownership or trespass committed by one not the true owner does not interrupt the continuity of the possession of one claiming under color of title.

4. IBID.—IBID.—If an owner of land permit it to be sold for taxes, it is not error to instruct jury that the time the purchaser was in possession committing acts of ownership should not be included in the time the original owner held without reference to any knowledge or absence of knowledge on part of original owner of such acts.

5. IBID.—IBID.—Under the facts in this case, the charge that one taking posesssion of land under a deed cannot claim adversely to another before that time, if error, is not prejudicial because not on a vital question in the case.
MR. JUSTICE WOODS *thinks question vital.*

6. IBID.—IBID.—The doctrine that possession attends the legal title is distinct from the doctrine of title by adverse possession, and charging the latter does not entrench upon the former.

7. IBID.—TITLE—EVIDENCE—WILL.—That a void will is received to show color of title does not show that it conveyed title.

33—78

Before MEMMINGER, J., Cherokee, March, 1906. Affirmed.

Action by W. P. Love against M. J. Turner. From judgment for defendant, plaintiff appeals. The exceptions to be set out are:

3. "That his Honor further committed error in charging as a matter of law, that the supposed facts referred to in the 19th request would, as matter of law, operate as an excision from the period of plaintiff's term of possession of the Palmer heirs, although no mention was made in such request of any knowledge or absence of knowledge of such supposed facts by such heirs.

4. "That his Honor further committed error of law in charging said 28th request; the error being that even if the facts therein supposed were true, they were not sufficient to necessarily produce the legal conclusion therein announced, to wit: that thereby plaintiff's adverse possession could not have begun before 1885; especially in view of the fact, as shown by the deeds of 1885 and 1886, that such deeds themselves declared that it was the intention of the grantors in said prior deeds of 1871 to 1875, to convey all the premises described in the deeds of 1885 and 1886.

5. "That his Honor further erred in charging defendant's 23rd request, to wit: 'Under the deeds of conveyance introduced in evidence by the plaintiff, they convey only such title as they purport to convey, and if after the conveyances were executed and delivered the grantors acquired any addition interest than is conveyed, such interest will not pass to the grantees as after acquired title by virtue of such conveyances.' The error being, as matter of law, that as the deeds referred to therein were warranty deeds, the title subsequently acquired by the grantors inured to the benefit of the grantee thereof.

6. "That his Honor erred in charging the defendant's 25th request, to wit: 'If neither the plaintiff nor any one under whom he claims was seized or possessed of the land within ten years before the commencement of this action;

or were out of possession for a period of ten years before the commencement of this action; and if during that time the defendant or those under whom she claims held the same adversely to the plaintiff, then the plaintiff cannot recover.' The error being that as a matter of law possession attends the legal title.

7. "That his Honor erred in charging the defendant's 26th request, to wit: 'The Will of Susan Love conveys no title to any land in this State.' The error being that such Will did convey color of title."

*Messrs. J. C. Jeffries* and *Stanyarne Wilson,* for appellant, cite: *As to charging on the facts:* 76 S. C., 63; 47 S. C., 461; 57 S. C., 340; 51 S. C., 460; 61 S. C., 563; 63 S. C., 515; 65 S. C., 331; 68 S. C., 161; 71 S. C., 159; 1 Cyc., 1012. *Continuity of adverse possession may be broken by any one going into possession:* 53 S. C., 220; 1 Cyc., 1012, 1014, note 55. *Possession attends legal title:* 71 S. C., 330. *Adverse possession must be hostile to all:* 13 Rich., 60; 29 S. C., 372.

*Mr. W. S. Hall, Jr.,* contra, cites: *An exception must point out a specific error:* 42 S. C., 281; 51 S. C., 534. *Statement of facts hypothetically is not a charge on facts:* 70 S. C., 189; 58 S. C., 373; 47 S. C., 488. *Nor is a statement of facts not prejudicial to appellant:* 72 S. C., 383. *Statement of contentions of a party is not a charge on facts:* 52 S. C., 438; 55 S. C., 90; 56 S. C., 360; 59 S. C., 297. *Temporary acts of a trespasser do not break the continuity of adverse possession under color of title:* 1 Cyc., 1011; 22 S. C., 365. *Possession of one holding under the holder of the legal title is not adverse to the legal title until disclaimed:* 26 S. C., 608; 2 Speers., 288; 2 Bail., 603. *Grantee under general warranty acquires any title afterwards acquired by his grantor:* 16 Cyc., 689, 693; 21 S. C., 55; 19 S. C., 9; 17 S. C., 592; 3 McC., 411; 5 Rich. Eq., 434; 1 Rich. Eq., 71. *Possession*

*attends legal title unless adverse possession be shown:* 53
S. C., 311; Code Proc., 101. *A will must be executed
according to laws of State where land is situate to convey
title, but may be color of title:* 1 Jar. on Wills, 10, 11; Story
Conf. Laws, sec. 474; Redf. Wills, 398; 28 S. C., 551; 71 S.
C., 331.

November 28, 1907. The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY. This is an action to recover posses-
sion of a tract of land containing 100 acres, and has here-
tofore been before this Court on appeal. 71 S. C., 322, 51
S. E., 101.

After the former trial the plaintiff amended his complaint
by alleging title in himself, by adverse possession as well as
by grant.

The jury rendered a verdict in favor of the defendant,
and the plaintiff has appealed.

Before considering the exceptions, it may be well, in a
general way, to state the facts and sources of title upon
which the respective parties rely.

They are thus set forth by the plaintiff's attorneys: "G.
B. Palmer; plaintiff's source of paper title, had granted to
him in 1838, a tract of 576 acres, which included the 100
acres in dispute. He died in possession in 1865. His chil-
dren (except plaintiff's wife) conveyed their interests to
plaintiff. They made deeds at different dates. In the first
set of deeds, from 1871 to 1875, the land was described as
449 acres. But in 1885 all of them except D. D. McCraw
(and he in 1886) corrected the error of acreage by making
new deeds to plaintiff, to wit, for 576 acres, stating therein:
'It was the intention of each of us (in the deeds hereto-
fore made) to convey all our right, title and interest in the
premises covered by said grant.' His wife afterwards de-
vised to him her interest therein by will, made in North
Carolina, which had only two witnesses. She left no chil-
dren. G. B. Palmer's estate was administered upon by

plaintiff and T. W. Palmer, one of the sons. Plaintiff lived
in North Carolina. T. W. Palmer fell out with plaintiff
somewhere in the sixties, and did not pay the taxes along
about 1866 or 1867. The land was put up, and, as claimed
by defendant, sold for taxes and bid in by one A. P. Turner,
who did not comply with his bid. Defendant does not con-
tend that A. P. Turner acquired legal title at such alleged
tax sale, but claims color of title therefrom in this way:
Judgment was obtained in a suit on debt against A. P.
Turner, and his interest, whatever it might be, was sold
under execution, and bid in by Merrick (assignee of Casey
& Cummings), and Merrick, on June 17, 1886, made a quit-
claim deed to G. S. Turner for twenty dollars. Defendant
claims that G. S. Turner went into possession under that
deed and then began his adverse possession, which, they say,
ripened into title June 17, 1896. The man whom Turner
first put into possession was Z. B. Nance. Plaintiff claims
that Nance was plaintiff's tenant and agent as to this land
in 1885 and 1886, and proved it by documents. Nance was
succeeded by Mrs. Wilkins and Mrs. Dormant; Turner
claiming they were his tenants; and plaintiff claiming they
were his, since 1900; while these ladies claim that they were
holding for themselves all along till 1900. The testimony
was very conflicting as to the character of the possession
of Mrs. Wilkins and Mrs. Dormant.

"Plaintiff proved, upon the subject of his title by posses-
sion: that G. B. Palmer was in possession from 1853 to his
death in 1865 (defendant's witness Harris says since
1840); his heirs were in possession (of at least part, and
thereby of the whole under grant covering whole) till they
conveyed to plaintiff; and his own possession by tenants
ever since, except when these ladies were in."

They are stated as follows by the defendant's attorneys:
"The defendant showed a prior grant to Moses Waters,
dated August, 1817, for the purpose of showing title out of
the State at the time of the Palmer grant. 2. A sale of the
land in dispute by the sheriff of Spartanburg County for

taxes of 1866, at which sale A. P. Turner became the pur-
chaser. 3. A sale of the same tract under execution in the
name of the State and Elizabeth Littlejohn against A. P.
Turner in 1871, at which sale the land was bid off by Casey
& Cummings, who transferred their bid to A. C. Merrick,
to whom a deed was executed by G. Wash. Thompson,
sheriff of Spartanburg County. 4. A conveyance by A. C.
Merrick to Geo. S. Turner, who went into possession in
1886. 5. Deed from Geo. S. Turner to Duncan & Sanders,
conveying a one-half undivided interest. 6. Deed from
Duncan & Sanders to R. B. Powell, conveying the same
one-half undivided interest. 7. Deed from R. B. Powell
by Duncan & Sanders, as attorneys in fact, to Duncan &
Sanders, under power contained in the mortgage to secure
the purchase money. 8. Deed from Duncan & Sanders to
W. N. Turner, conveying the same one-half undivided inter-
est. 9. Partition between W. N. Turner and heirs of Geo.
S. Turner in 1899, at which sale the defendant became the
purchaser, and a proper deed of the entire tract made to her
by the clerk of the Court.

"Geo. S. Turner died about 1894, and his minor heirs con-
tinued to hold possesion through tenants that were put in
possession by their father and Duncan & Sanders."

The first exception assigns as error that his Honor, the
presiding Judge, in charging certain of defendant's
requests, violated sec. 26, art. V, of the Constitution,
which provides that "Judges shall not charge juries
in respect to matters of fact." The requests are set out,
but the exception fails to specify in what particulars they
trenched upon the provisions of the Constitution.
They are, therefore, too general for consideration.
Furthermore, the statement of facts was merely
hypothetical.

The second exception is as follows: "2. That his Honor
further erred in charging in those requests that the adverse
possession set up by the defendant could not be defeated by

acts of Powell, referred to in the 18th request; the error being that, as matter of law, it was not necessary for the said Powell to claim under the plaintiff in order to be in possession, to break a continuity of possession of the defendant, and those under whom she claims."

The 18th request, refered to, in the exception is as follows. "If you should find that Bob Powell remained on the premises after his interest, if he had any, was conveyed to Duncan & Sanders, and claimed the land, or attempted to exercise any ownership to the same, unless he claimed through the true owner of the land, his claim and acts of ownership and possession, if he made any, were simply that of a trespasser, and would not prevent the possession of the other tenants in common from ripening into title, and especially if Powell abandoned the premises. For occasional acts of ownership, or trespasses committed by others than the true owner, do not interrupt the continuity of the possession of others claiming under color of title, and holding the land adversely."

The rule is thus stated in 1 Cyc., 1011, *et seq.:* "The mere temporary entry or intrusion, or occasional trespass by a stranger, does not interrupt the running of the statute in behalf of the adverse claimant. The intrusion of a trespasser will, in no case, interrupt the continuity of adverse possession, unless continued for such a length of time that knowledge of the intrusion is presumed, or so as to become the assertion of an adverse right. If they are known, they become assertions of right, and operate to break the continuity, unless legal remedies are resorted to, within a reasonable time, to regain possession, and are prosecuted to a successful determination."

The Court uses this language in the case of *Duren* v. *Sinclair,* 22 S. C., 361, 366 : "While it may be true that certain acts of ownership, exerted by others during the statutory period, submitted to by the plaintiff, or that an action of trespass under some circumstances might afford evidence that he was not holding as owner himself, but by permission

of the true owner, yet it would not be true that any act of ownership by another, or that any and every action of trespass, as the Judge was requested to charge, would have that effect. * * * Each case must be governed by its own facts and circumstances, and what would be the law in reference to one state of facts might not be in reference to another. Adverse possesion is one of the modes of acquiring title to land. At the beginning of such possession the actual title is in some one other than the adverse holder, *i. e.,* the true owner.

"If he submits for the statutory period, the adverse holding ripens into a title against him, and, of course, against all others, and the fact that others not being the true owner may have attempted during his possession to exercise some acts of ownership, or commit some trespass, or may have brought action of trespass against him and failed, would not prevent the title of the true owner from passing to him at the expiration of the statutory period."

This principle, however, is to be considered in connection with another rule, to wit: "By the execution and delivery of a deed of land, the entire legal interest in the premises vests in the grantee, and if the grantor continues in possession afterward, his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises, in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation, and a notorious assertion of right in himself, will be sufficient to change the character of his possession, and render it adverse to the grantee." 1 Cyc., 1039; *McCutchen* v. *McCutchen,* 77 S. C., 129.

There was no testimony showing that the case under consideration comes within the principle last stated, and the exception is, therefore, overruled.

The remaining exceptions will be set out in the report of the case and considered in their regular order.

*Third Exception:* The appellant's attorneys have not argued this exception, and we deem it only necessary to state that it is without merit.

*Fourth Exception:* Conceding that the ruling set forth in this exception was erroneous, it did not relate to the vital question in the case; for, as stated by appellant's attorneys: "In this trial, as well as the other, the real battle ground was defendant's claim of adverse possession."

*Fifth Exception:* This exception was practically abandoned, but even if still urged it could not be sustained, for the reasons stated in considering the fourth exception.

*Sixth Exception:* The proposition that, as matter of law, the possession attends the legal title, is entirely distinct from that embodied in the exception, and should have been presented in a separate request, if relied upon, by the appellant.

*Seventh Exception:* The fact that the void will might be introduced in evidence, as color of title, does not show that it *conveyed* title.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.


MR. JUSTICE WOODS, *dissenting.* I think the fourth exception should be sustained, and, therefore, I am unable to concur in the judgment of the Court.

The issues between the parties are set out at length in the opinion written by Mr. Justice Gary, and need not be restated here. The decision of the case depended mainly on the jury's view of the evidence on the claims of title by adverse possession set up by both parties. The plaintiff alleged the heirs of C. B. Palmer had acquired title by adverse possession, and then conveyed to him; and he also alleged that he had acquired title by his own adverse possession. The first conveyances of the Palmer heirs to plaintiff were made at different dates from 1871 to 1875, describing the land conveyed as four hundred and forty-nine acres. In 1885 and 1886, new deeds were

made, describing the land as five hundred and seventy-six acres, and reciting that the grantors intended by the former deeds to convey the entire five hundred and seventy-six acres. Mrs. Love, the plaintiff's wife, was one of the heirs, and her interest plaintiff claimed by adverse possession under a paper in the form of a will purporting to devise all of her property to him, but which was available only as color of title, because not legally executed. On the issue of adverse possession thus made by the plaintiff, the Circuit Judge, in accordance with the request made by the defendant, charged the jury this proposition, limiting plaintiff's claim of adverse possession: "Where a party accepts a deed of conveyance to land from another, such acceptance is recognition of title in the grantor which the grantee cannot dispute. So if, in 1885 and 1886, W. P. Love accepted deeds from the heirs of G. B. Palmer, conveying the land in dispute, and if the Holloway land was not covered by the deeds of the heirs from 1871 to 1875, then the plaintiff recognized an outstanding title in the heirs to the land in dispute, and cannot show any title as against them by adverse possession before the acceptance of the deeds of 1885 and 1886."

There was evidence of the plaintiff holding adverse possession by a tenant of the land in dispute after the deeds of the Palmer heirs of 1871 to 1875, and before the deeds of 1885 and 1886. If the plaintiff held possession of the land so that he had acquired a title by adverse possession prior to the deeds of 1885 and 1886, there is no ground whatever for saying he could not avail himself of a title so acquired, merely because he chose to strengthen his title by obtaining conveyances from other claimants. This instruction clearly deprived the plaintiff of the benefit of the consideration by the jury of his evidence of title acquired by adverse possession before the execution of the deeds of 1885 and 1886, and was, therefore, prejudicial on a vital issue in the cause.