### WEST VIRGINIA PULP & PAPER CO. v. CONE.

No. 5442.

Circuit Court of Appeals, Fourth Circuit.

Feb. 7, 1946.

Christie Benet, of Columbia, S. C., and Charles W. Waring, of Charleston, S. C. (D. A. Brockinton, of Charleston, S.C., and J. B. S. Lyles, of Columbia, S. C., on the brief), for appellant.

H. Wayne Unger, of Walterboro, S. C., and James P. Mozingo, of Darlington, S. C. (Jefferies, McLeod & Unger and W. J. McLeod, Jr., all of Walterboro, S. C., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and GILLIAM, District Judge.

DOBIE, Circuit Judge.

Andrew N. Cone, hereinafter referred to as plaintiff, brought an action in the Court of Common Pleas for Colleton County, South Carolina, against West Virginia Pulp and Paper Company, a Delaware corporation, hereinafter referred to as the Paper Company, or as defendant, claiming $25,000 damages for trespasses by the defendant in entering plaintiff's land and cutting and removing timber therefrom. The case was removed to the United States District Court for the Eastern District of South Carolina on the ground of diversity of citizenship and was tried with a jury at the May Term, 1945.

The plaintiff's amended complaint alleged that he was the owner of a tract of land situate in Dorchester County, South Carolina, consisting of 106.5 acres, which had been conveyed to him by his mother, Caroline F. Cone, in 1920, and that he had thereafter been in quiet, peaceable and exclusive possession of this tract of land for more than twenty years. He further alleged that the defendant, its agents and servants, had entered thereon in September, 1941, without the plaintiff's knowledge or consent, and had cut and removed a large quantity of timber. The defendant entered a general denial and, after two pre-trial conferences, the case came on for trial.

 The action was in the nature of the old common law action of trespass quare clausum fregit, which bases the plaintiff's right to recover upon the injury to his possession. Hence the defendant's general denial put plaintiff first to the proof of such possession, actual or constructive, as would maintain an action. The South Carolina authorities are clear that plaintiff might do this by proof either of actual physical possession, the pedis possessio, or by proof of a perfect legal title, from which constructive possession is presumed. Beaufort Land & Investment Co. v. New River Lumber Co., 86 S.C. 358, 68 S.E. 637, 30 L.R.A.,N.S., 243; Haithcock v. Haithcock, 123 S.C. 61, 115 S.E. 727, 734;

Section 377, Code of South Carolina 1942. Constructive possession may also be shown by other methods, as by physical occupancy of part of a tract under color of title, whereby constructive possession of the entire tract is said to be established; but we are here dealing with wild and unoccupied lands, and no actual physical occupancy of these lands was either claimed or proved by plaintiff.

 At the trial plaintiff undertook first to prove his legal title. This he might do in any one of four ways: (1) By producing a grant from the State and connecting himself by an unbroken chain of paper title; (2) by tracing his paper title back to a common source and proving the better title therefrom; (3) by showing that he, together with those under whom he claimed, had been in adverse possession continuously for twenty years, whereby a presumption of a grant would have arisen; or (4) by proving that he himself had been in adverse possession continuously for a period of ten years. Thomas v. Dempsey, 53 S.C. 216, 220, 31 S.E. 231, 233; Haithcock v. Haithcock, 123 S.C. 61, 66, 115 S.E. 727, 729. Admittedly, he made no serious attempt to qualify under either of the first two of these methods, since he produced no paper title back of 1888 and was unable to connect up by admissible evidence the title back of his immediate grantor, his mother, who, it was stated, had acquired the property in 1917. In this connection it may be noted that plaintiff's deed from his mother, contrary to almost universal practice, makes no mention whatsoever of the source of his grantor's title.

 It may be interjected here that harmful error unquestionably took place in the admission and failure to take from the jury of testimony with respect to the plaintiff's purported chain of title prior to the deed from his mother to him. All this testimony was admitted by the judge "subject to it being connected up with the present owners," yet when a motion to strike it for failure so to connect this testimony was made, the judge denied the motion, stating that this was a matter for the jury. The confusion made possible by this retention of inadmissible evidence as to the state of the plaintiff's title is best exemplified by the fact that the judge himself speaks of the "lost deed" from plaintiff's father to his mother, although there is not a single scrap of testimony in the record that the deed was lost or in any other manner accounted

for, nor was even its original existence ever testified to by anyone who had seen it.

Returning to the details of the plaintiff's proof, we find that his inability to establish proper paper title left him dependent upon proof of adverse possession, either for ten years in himself, or for twenty years in himself and those under whom he claims, if he was to establish title as a basis for the present action. The extent of the adverse possession required as to unenclosed and unimproved lands is stated by the statute to be "where * * * it has been used for the supply of fuel or of fencing timber, for the purposes of husbandry, or the ordinary use of the occupant." Section 379, Code of South Carolina 1942.

■ The quality of the plaintiff's proof as to any such possession left much to be desired. Accepting his own testimony at face value, he had hunted on it, although not every year, had cut and sawed some fallen trees for clapboard in 1923 or 1925 "and all through there," and would camp upon it for as much as a week at a time during hunting season. However, he had never posted it, claimed never to have seen either the fire line cut by the CCC in 1935 or the posted signs regularly maintained by the defendant, both of which were testified to by several witnesses, and finally summarized his actions in the following words: "After I moved away from there (in 1923) I didn't do nothing." Aside from this testimony, the only other evidence of his possession was that he paid taxes on the property and that his father, in his behalf, had given one other individual permission to hunt on the property.

Such sporadic acts do not satisfy the requirements to constitute adverse possession. Among the many decisions on this point, reference is made to only a few. From this Court, in another South Carolina case, we find the following statement in an opinion by Judge Woods in Mullins Lumber Co. v. Williamson & Brown Land & Lumber Co., 4 Cir., 255 F. 645, 647:

"The land in dispute was wild swamp land, incapable of cultivation. The testimony relied on to establish adverse possession proved no continuous use or acts of trespass, but only occasional cutting of timber. This is not sufficient to establish the requisite continuity of possession. Bailey v. Irby, 2 Nott & McC., S.C., 343, 10 Am.Dec. 609; Duren v. Sinclair, 22 S.C. 361–366; Love v. Turner, 78 S.C. 513–519, 59 S.E. 529. * * *"

In the case of Lewis v. Pope, 86 S.C. 285, 68 S.E. 680, 683, the following statement was specifically approved:

"He cannot succeed in such claim (of adverse possession) by living on another tract and cultivating for a few years a small patch on the tract he claims, or by going on such tract and sometimes cutting wood or timber, and hauling it off for use on the tract on which he lives, but he must show that he has been doing that for 10 consecutive years."

■ From an exhaustive analysis of the authorities in Weston v. Morgan, 162 S.C. 177, 160 S.E. 436, at page 445, the following summary may be quoted:

"A plaintiff claiming title by adverse possession must show the extent of his possession. Cantey v. Platt, 2 McCord 260.

"The burden of the proof of adverse possession is on the one relying thereon. Gourdine v. Fludd, Harp., S.C., 232.

"Occasional and temporary use or occupation does not constitute adverse possession. Atlantic C. L. R. Co. v. Searson, 137 S.C. 468, 135 S.E. 567.

* * * * * *

"And to constitute adverse possession it must be open, notorious, exclusive, hostile, continuous, and unbroken for the whole period. Hill v. Saunders, 6 Rich., S.C., 62; Ouzts v. McKnight, 114 S.C. 303, 103 S.E. 561; Clary v. Bonnett, 114 S.C. [452], 459, 103 S.E. 779; 1 R.C.L. 700–716.

"Successive possessions for less than the statutory period cannot be tacked, unless by descent cast. King v. Smith, Rice, S.C., 10; Porter v. Kennedy, 1 McMul., S.C., 354; Garrett v. Weinberg, 48 S.C. 28, 26 S.E. 3.

"Occasional or temporary use or occupation is not sufficient. Jackson v. Lewis, Cheves, S.C., 259; McCullough v. Wall, 4 Rich., S.C., 68, 53 Am.Dec. 715."

And further, with reference to the necessity of establishing continuity of such adverse possession, the following statement is taken from Cathcart v. Matthews, 105 S.C. 329, 89 S.E. 1021, at page 1025:

" 'It has been said that, if there be one element more distinctly material than another in conferring title by adverse possession, where all requisites are so, it is the existence of a continuous adverse possession. There must be such continuity of possession as will furnish a cause of action for every day during the whole period required to perfect title by adverse posses-

sion.' 2 Corpus Juris, 82; Porter v. Kennedy, 1 McMul., S.C., 354; Hill v. Saunders, 6 Rich., S.C., 62; Massey v. Duren, 3 S.C. 34."

 From all the foregoing, it seems obvious that the plaintiff here has failed to establish such possession, actual or constructive, as to establish his title to the property. Having failed to establish title, his action must fail unless his proof shows him to have been in possession at the time of the trespass.

It follows of necessity that the inadequacies of plaintiff's proof of prior possession become even more glaring if they are to be interpreted as proof of present possession. Especially is this so if this proof is considered in the light of the defendant's proof offered to establish its own actual possession, since its purchase of the property in 1924. In brief, this proof of the defendant showed the cutting of an extensive fire line by the CCC on behalf of the Paper Company, the regular maintenance and clearance of this line by Company agents, the regular posting of the property by the Paper Company, entry upon the property to guard against poachers and fire hazards at intervals of about once a week by an agent of the Company, and finally the entry (herein complained of) when the bulk of the timber on the property was cut. It is difficult to see that defendant could have done much more to assert its possession.

 The following statement of the acts of ownership or possession required as to lands such as this tract is taken from D.W. Alderman & Sons Co. v. McKnight, 95 S.C. 245, 78 S.E. 982, 986:

"On the question of adverse possession my conception of the law is that the law is not as strict or as jealous as to what constitutes acts of adverse possession with regard to open, wild, unfenced, and uncultivated lands, or lands that are not capable of cultivation, as it would be with regard to lands that are capable of cultivation, or which are situated in some time capable of having the highest acts of possession exercised with regard to them; but that acts of adverse possession, or acts of ownership, with regard to open, wild, unfenced lands, lands not capable of cultivation, are only required to be exercised in such way and in such manner as is consistent with the use to which the lands may be put and the situation of the property admits of without actual residence or occupancy."

The plaintiff makes much of the point that he paid taxes on the property, whereas such payment by the Paper Company was not clearly shown. The South Carolina law on this point has been expressed in the statement: "The payment of taxes is not evidence of title as is supposed in popular myth, but the failure to pay is evidence that no claim was made." Gadsden v. West Shore Investment Co., 99 S.C. 172, 82 S.E. 1052, 1053. But in applying this rule to the instant case, it must be remembered that the state of the proof was merely that payment by the Paper Company was not conclusively established for all years of ownership. Defendant did allege such payment by a subsidiary company, the Cooper River Timber Company, for the intervening years.

It is most unfortunate that the system of keeping the land records for taxation in this region was such that it is almost entirely impossible to determine with any measure of certainty just what parcel or parcels of land were covered by a particular tax payment. The inadequacies of this system also account for the otherwise curious fact that the State would accept, without inquiry, an unlimited number of duplicate payments of taxes by different parties on the same tract of land for the same year. In such a state of the records, it does not appear that material reliance by either party upon payment of taxes is really justifiable.

In the foregoing portions of this opinion we have set forth our views of the facts, as they were presented at the trial, along with the related comments on the apposite law, as we see it. Before summarizing our conclusions, it must be stated that the defendant took numerous exceptions to the introduction of certain evidence, to some of which reference has already been made, and moved for a directed verdict at the conclusion of the entire testimony. This motion was denied and the jury returned a verdict for the plaintiff, setting the damages at $15,000. The defendant moved for a new trial and later renewed this motion upon the basis of newly-discovered evidence. Following judgment for plaintiff after the denial of these motions, the case was brought here on appeal.

On its appeal, the defendant argues that the judgment below should be reversed in consequence of the plaintiff's failure to establish either title or possession and the defendant's establishment of both title and possession, because of prejudicial error in

the admission of testimony as to the plaintiff's back title, because of the denial of the motion for a new trial on the basis of after-discovered evidence, and also because of a contention not previously noted here, namely, that the trespass complained of was not committed by the defendant. Our views with respect to several of these grounds have already been indicated, at least in part.

Specifically, we have already indicated our opinion that prejudicial error occurred in the admission of evidence with reference to the plaintiff's alleged predecessor in title. This ground alone is sufficient to require a remand of the case for a new trial, so that it is unnecessary for us to consider whether the denial of defendant's motion for a new trial upon after-discovered evidence was error. The defendant's final contention, that since the actual cutting of the timber was done by another company, no liability was shown as to it, seems to us without merit. It is conceded that the other company entered under authority of a timber deed from the Paper Company, acted on its behalf, and was directly supervised in its actions by the Paper Companys' agents. One may not escape civil responsibility for a trespass merely by hiring some one else to do the physical labor involved, under one's own immediate supervision. Accordingly, we reject this basis of the defendant's appeal.

This leaves only the question as to whether or not the plaintiff has established sufficient possession, actual or constructive, to justify him in maintaining this action. Since the defendant has also undertaken to show its own actual possession, it is in order to consider the legal status of two conflicting claims of possession at the same time. The following quotation from the old case of Vance v. Beatty, 4 Rich., S.C., 104, has recently been reaffirmed by the South Carolina Supreme Court in Littleton v. Roberts, 181 S.C. 303, 187 S.E. 349, 351:

"For a casual trespass, one resting on his title alone may maintain this action, because trespassers of this description acquire no possession and have nothing to oppose. But where the defendant is in actual possession the case is different; for, as is said in Annick v. Frazier, (Dud., S.C., 340) it would be a 'solecism to say that one can have a constructive possession of that which is in the actual possession of another.' In this contest between actual and constructive possession the latter has always been made to yield, or, as was said in the recent case of McColman v. Wilkes, (3 Strob., S.C., 465, [51 Am.Dec. 637]) 'it is always displaced by any actual possession;' and in the cases of Davis v. Clancy & Johnson [3 McCord, S.C., 422], and Peareson v. Dansby & Nelson, [2 Hill, S.C., 466], already referred to for other purposes, the same principle is fully maintained."

On the basis of the foregoing authority and in the light of at least substantial proof of actual possession by the defendant, it would appear that plaintiff should be required to establish actual, rather than constructive, possession, in order to maintain his action. It might be contended that the jury's verdict for plaintiff has established such possession. But such is not the case where improper evidence was before the jury as to plaintiff's title, so that the general verdict may just as well have been based upon the jury's conception that plaintiff had title as that he had possession.

From the foregoing analysis, it is definitely established that the judgment below cannot stand. This leaves to be determined the question of whether the case shall be remanded for a new trial or reversed outright on the basis of error in denying defendant's motion for a directed verdict. Since we have determined that the plaintiff did not prove title, this question must turn on whether or not there was sufficient evidence of plaintiff's possession to go to the jury. The facts that plaintiff paid taxes on the land and that his father gave someone else permission to hunt on the land are matters whose sole probative force is directed to plaintiff's title, not his possession, so that these may be rejected here.

This leaves only two facts: first, plaintiff's testimony of sporadic hunting on the land, concededly not every year and apparently of such limited scope that he never saw the Paper Company's posted signs nor the fire line cut six years before the trespass here complained of; and second, the cutting of some fallen timber for clapboard at an indefinite time, apparently about eighteen years before the alleged trespass. And even these slender crutches must be evaluated in the light of plaintiff's statement that, after he moved away in 1923, he "didn't do nothing" concerning the property, and the fact that upon his discovery of the timber cutting he made no open protest

or complaint of any kind, variety or description.

We cannot convince ourselves that such proof establishes possession, however charitably it may be viewed. If possession was not established, the judge erred in denying defendant's motion for a directed verdict. We find that possession was not established by any evidence worthy of submission to the jury. The judgment of the lower court is accordingly reversed with direction to enter judgment for the defendant.

Though no motion for judgment notwithstanding the verdict (non obstante veredicto) was made in the lower court by the defendant, we think, on the strength of the reasons discussed and the authorities cited in United States v. Halliday, 4 Cir., 116 F.2d 812, we have power, (under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c) instead of ordering a new trial, to direct the entry of judgment by the lower court in favor of the defendant. See, also Dobie, the Revision of the Federal Rules of Civil Procedure, 30 Va.L.Rev. 513, 521.

Reversed.