## CONE v. WEST VIRGINIA PULP & PAPER CO.

### No. 5807.

United States Court of Appeals
Fourth Circuit.

Nov. 9, 1948.

---

3 Webster's New International Dictionary, 2d Ed. 1935.

4 See Jefferson v. United States, D.C. Md.1947, 74 F.Supp. 209.

H. Wayne Unger, of Waltersboro, S. C. (W. J. McLeod, Jr., of Bennettsville, S. C., and J. P. Mozingo, III, of Darlington, S. C. on the brief), for appellant.

Charles W. Waring, of Charleston, S. C., and Christie Benet, of Columbia, S. C. (J. B. S. Lyles, of Columbia, S. C., and D. A. Brockinton, of Charleston, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

From our first opinion in this case, West Virginia Pulp & Paper Co. v. Cone, 4 Cir., 153 F.2d 576, 578, we quote:

"Andrew N. Cone, hereinafter referred to as plaintiff, brought an action in the Court of Common Pleas for Colleton County, South Carolina, against West Virgina Pulp and Paper Company, a Deleware corporation, hereinafter referred to as the Paper Company, or as defendant, claiming $25,000 damages for trespasses by the defendant in entering plaintiff's land and cutting and removing timber therefrom. The case was removed to the United States District Court for the Eastern District of South Carolina on the ground of diversity of citizenship and was tried with a jury at the May Term, 1945.

"The plaintiff's amended complaint alleged that he was the owner of a tract of land situate in Dorchester County, South Carolina, consisting of 106.5 acres, which had been conveyed to him by his mother, Caroline F. Cone, in 1920, and that he had thereafter been in quiet, peaceable and exclusive possession of this tract of land for more than twenty years. He further alleged that the defendant, its agents and servants, had entered thereon in September, 1941, without the plaintiff's knowledge or consent, and had cut and removed a large quantity of timber. The defendant entered a general denial and, after two pre-trial conferences, the case came on for trial."

At this first trial, the jury returned a verdict in favor of the plaintiff in the sum of $15,000 and judgment thereon was duly entered. The District Court denied the motions of defendant for a directed verdict in its favor and for a new trial. Upon defendant's appeal to us, we reversed the judgment below and directed that judgment be entered by the District Court in favor of the defendant.

Thereupon, the plaintiff obtained certiorari from the United States Supreme Court, which reversed our decision and held that, in the absence of a motion by defendant for judgment non obstante veredicto, "the appellate court was without power to direct the District Court to enter

772

judgment contrary to the one it had permitted to stand." Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 218, 67 S.Ct. 752, 756, 91 L.Ed. 849. The mandate of the Supreme Court, filed pursuant to its opinion, directed the reversal of the judgment entered for the defendant in accordance with the mandate of our Court to the District Court.

The plaintiff issued execution to the United States Marshal for the Eastern District of South Carolina, whereupon the defendant moved for an order setting aside and cancelling and staying all proceedings upon the execution and at the same time moved to set off judgment for costs in favor of the defendant on account of its successful appeal to the Circuit Court of Appeals against the judgment for costs in favor of the plaintiff on account of its success in the Supreme Court. By order dated May 13, 1947, the District Judge granted the motion to set aside, cancel and stay the execution and gave leave to tax and offset costs in accordance with the motion of the defendant. The District Court set the case down for a second trial. The defendant again appealed to us and we, by order dated November 18, 1947, directed that the appeal be dismissed with costs on the ground that the order appealed from was not a final order and that the appeal was fragmentary and premature.

Defendant then petitioned the Supreme Court for certiorari, which was denied May 24, 1948. The Supreme Court, by order filed June 16, 1947, had denied a motion to recall and amend its mandate, 331 U.S. 794, 67 S.Ct.1725, 91 L.Ed.1822.

At the second trial in the District Court, defendant moved for a directed verdict in its favor at the conclusion of plaintiff's testimony and again at the conclusion of all the evidence. The District Court denied these motions. A verdict for plaintiff in the sum of $10,000 was returned by the jury. Defendant then moved for judgment in its favor notwithstanding the verdict. The District Judge granted this motion and judgment was accordingly entered in favor of the defendant. Plaintiff has duly appealed to us.

■ We think the District Court correctly allowed the offset of costs. The prevailing rule is that costs are assessed against the losing party. In our mandate on the first appeal the original judgment, from which the appeal to us was taken, was "reversed with costs." And these costs were taxed by the Clerk of the District Court in accordance with the rules of our Court. See, also, Rookard v. Atlanta & C. Air Line Ry. Co., 89 S.C. 371, 376, 71 S.E. 992; Land Oberoesterreich v. Gude, 2 Cir., 93 F.2d 292. Defendant sent its check ·for $162.04, the balance against it shown by the offset, and copy of defendant's letter to the Clerk was sent to plaintiff's counsel. The Clerk sent a check to plaintiff's counsel for this amount and this check was duly cashed, with no protest by plaintiff.

■ We think the District Court correctly ruled that the mandate of the Supreme Court did not operate to reinstate and validate the original judgment entered in the District Court in the first trial of this case. When the mandate of our Court on the first appeal was received, the District Judge entered an order ·on April 1, 1946. This order provided that the original judgment entered in favor of plaintiff for $15,000, with interest and costs, "is hereby reversed and set aside and that the Clerk make appropriate entries accordingly." There was, thus, no existing judgment which could be considered as a basis for the execution sought by the plaintiff.

The order of the Supreme Court granting certiorari in this case reads:

. "Petition for writ of certiorari to the Circuit Court of Appeals for the Fourth Circuit granted limited to the questions. of federal procedure raised by the petition for the writ." 329 U.S. 701, 67 S.Ct. 57, 91 L.Ed. 612.

And in the opinion in the Supreme Court, Mr. Justice Black, after quoting this order, 330 U.S. at page 215, 67 S.Ct. at page 754, 91 L.Ed. 849, said:

"The point we had in mind was whether a party's failure to make a motion in the District Court for judgment notwithstanding the verdict, as permitted in Rule 50(b)

[Federal Rules of Civil Procedure, 28 U.S.C. A.], precludes an appellate court from directing entry of such a judgment. Other questions have been discussed here, but we do not consider them. Consequently, we accept, without approving or disapproving, the Circuit Court of Appeals' holding that there was prejudicial error in the admission of evidence and in the submission of the case to the jury."

We think, accordingly, it is crystal clear that the Supreme Court did not consider the merits and adjudicate them in favor of the plaintiff. Where the Supreme Court, in cases of this character, has intended (after reversing the Circuit Court of Appeals) to re-instate the judgment of the District Court, the Supreme Court has expressed this intention in clear and unmistakable terms which could not be misunderstood.

Thus in Conway v. O'Brien, 312 U.S. 492, 61 S.Ct. 634, 636, 85 L.Ed. 969, the last paragraph of Mr. Justice Reed's opinion reads: "We reverse the judgment of the Circuit Court of Appeals and affirm that of the District Court." Again, in Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 640, 85 L.Ed. 945, we find the conclusion of Mr. Justice Black's opinion: "The judgment of the Circuit Court of Appeals is reversed, and that of the District Court is affirmed." In Halliday v. United States, 315 U.S. 94, 62 S.Ct. 438, 442, 86 L.Ed. 711, Mr. Justice Byrnes ended his opinion with the words: "The case is remanded to permit the reinstatement of the judgment of the District Court." Unlike the instant case, in each of these three cases just cited, the Supreme Court granted the writ of certiorari without any limitation to questions of federal procedure and the Supreme Court considered and reviewed in detail the evidence, then held that this evidence was sufficient to justify a submission of the case to the jury.

We, therefore, think that the ruling of the District Judge was correct when he held that the result which the Supreme Court intended was a new trial of the case in the District Court.

This brings us to the heart of the present appeal. Was the ruling of the District Judge proper, when, after the second trial, he directed that judgment be entered for the defendant notwithstanding the jury's verdict in favor of the plaintiff? We think this question must be answered in the affirmative.

In our opinion on the previous appeal in this case, 4 Cir., 153 F.2d 576, we discussed at some length the applicable law and the evidence offered by plaintiff. We there held that the plaintiff failed to establish either such title or such possession as would enable him successfully to maintain his action of trespass quare clausum fregit. We think this is also true of the evidence at the second trial.

In the second trial, as in the first, plaintiff failed utterly to establish his paper title, since there was no evidence to establish title in plaintiff's mother, grantor in a deed of this property to the plaintiff. We need not consider, either, the proof offered by defendant of paper title in the defendant. We, then, discuss only the evidence offered by plaintiff in an endeavor to establish in himself such title by adverse possession, or such possession at the time when defendant cut the timber, as would entitle him to go to the jury. A comparison shows that the testimony offered by plaintiff at the second trial differed little from the evidence offered at the first trial.

The testimony of plaintiff as to acts of possession by his father and mother was utterly inconsequential. Nor was plaintiff helped by the evidence of his wife, Adelaide Cone, and the evidence of his son, Bailey Cone, who admitted that he had not been on the property for many years except to hunt and look around. Postell testified as to a survey and plat he made in 1920 but stated he had not been on the property since then. The cutting of timber by defendant occurred in September, 1941. Plaintiff's witness, Willis, testified that many people in that neighborhood hunted turkeys on the property. Cooley, another witness of plaintiff, testified that, at the time defendant cut the timber, he saw the fire line cut by defendant and the signs posted by defendant; and there was nothing in his testimony to indicate that, in September, 1941, either the plaintiff, or anyone acting

774

on his behalf, was in possession of the property or was exercising any definite acts of possession thereon.

Plaintiff's own testimony, upon which his counsel heavily rely, followed the same general line as his testimony at the first trial. At best, his evidence showed only sporadic acts of hunting on the property, cutting clapboards from fallen timber and occasional visits. In our former opinion (153 F.2d at page 579) we held (which we again affirm): "Such sporadic acts do not satisfy the requirements to constitute adverse possession."

The fatal weakness of plaintiff's testimony is too clearly shown by the following extract from his cross-examination:

"Q. Now, when was that you took these clapboards? A. That was around from 1912 on down—you know around.

"Q. 1912, along in there? A. I'd say I took the boards off—storm—a lot of timber blowed down. Sometimes I could saw them up and make clapboards and shingles, but I didn't use the standing timber * * *.

"Q. On down to when? A. Well, about 1925.

"Q. About 1925? A. Yes, sir.

"Q. You were going on there and taking clapboards and boards along in there, and that was—you didn't do anything after 1925 on that property? A. Oh, yes.

"Q. What? A. From 1925 I continued to visit the place and hunt. * * *

"Q. How often did you hunt there? A. Sometimes once every week, once every two weeks, three weeks, something like that—we had a camp. * * *

"Q. Well, Mr. Cone, did you hunt there once every week or once every two weeks the year around? A. No, you couldn't hunt the year around.

"Q. Just during the hunting season, is that right? A. When I'd hunt.

"Q. Just during the hunting season you'd go there, perhaps once every two weeks and— A. After that, I'd go and look for notices, see if anybody was cutting timber or posting notices. * * *

"Q. Mr. Cone, let me ask you once more. Will you answer my question yes or no? After 1925, did you do anything with this property, this disputed property, except occasionally hunt and look around and see if anybody was cutting on it? A. No, I didn't do nothing after that except go on it and see if anybody was trespassing on it.

"Q. You didn't post it at any time? A. Sir?

"Q. You did not post the property at any time? A. No, I didn't post it.

"Q. You didn't fence it? A. No, I didn't fence it.

"Q. You didn't cultivate any crops? A. I couldn't cultivate any crops.

"Q. You didn't anyway? A. No, I didn't.

"Q. You didn't cut any trees on it? A. I got downed timber off it.

"Q. You only got clapboards from fallen timber? A. I didn't want to cut it. It was virgin timber. I wanted to save it.

"Q. You didn't anyway? A. Wanted to save it—didn't want it cut.

"Q. Did you ever have occasion to tear down the signs the West Virginia Pulp and Paper Company had put up? A. No, sir, I didn't tear them down. I know it's against their rules to tear signs down they put up."

We think it unnecessary to add anything further to our discussion of this case in our prior opinion, 4 Cir., 153 F.2d 576. Taken at its strongest on behalf of the plaintiff, the evidence offered by plaintiff was insufficient to take the case to the jury. The decision of the District Judge in directing that judgment be entered for defendant notwithstanding the jury's verdict for plaintiff was clearly correct. The judgment of the District Court is, accordingly, affirmed.

Affirmed.