JENKINS v. CHARLESTON STREET RAILWAY CO.

1. EVIDENCE—CONTRACT—DAMAGES.—A CONTRACTOR, in suit for damages for refusal of defendant to give him, as lowest bidder, the contract for erecting certain buildings, may testify as to the differences between the actual calculated cost of the building and the amount of bid, to show loss to him by breach of defendant; he may also testify that party receiving contract took more time in completing building, without complaint from defendant, than it proposed to allow him for the work.

2. NONSUIT properly refused here, there being some testimony on the issues.

3. CONTRACT—BUILDING CONTRACT—DAMAGES.—Jury were properly charged that profits on a building contract are a basis of damage to a contractor, who is deprived of them by breach of defendant.

4. A CHARGE of legal propositions based on hypothetical statements of fact, including admitted facts, is not violative of constitutional inhibition.

Before KLUGH, J., Charleston, March, 1899.  Affirmed.

Action for damages for breach of contract by Edward N. Jenkins against Charleston Street Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mordecai & Gadsden,* for appellant, cite: *Profits from building contract on which no work has been done, cannot be considered as element of damages:* 40 S. C., 398; 25 S. C., 72; 39 S. C., 427; 51 S. C., 144. *Error to refuse nonsuit:* 25 At. R., 886.

*Messrs. Trenholm, Rhett, Miller & Whaley,* contra, cite: *Plaintiff can testify as to amount of profit he would have made on the contract:* 35 S. C., 340; 28 S. C., 261; 27 S. C., 178; 29 S. C., 304, 162. *Builder's contract need not be in writing:* 21 N. Y., 305. *Charge considered as a whole is not violative of Constitution:* 41 S. C., 440; 39 S. C., 259; 40 S. C., 813. *Loss of profits is proper basis of damages:* 73 Am. D., 66; 13 How., 344; 78 Ala., 249; 110 U. S., 338; 141 Pa. St., 477; 49 Vt., 304; 137 Ind., 592.

Aug. 2, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE.    In an action to recover damages for breach of contract, the plaintiff recovered a judgment against the defendant for the sum of $800. After judgment thereon, the defendant appealed to this Court on the three grounds : *First,* that the Circuit Judge erred in admitting certain testimony; *second,* that the Circuit Judge erred in overruling defendant's motion for a nonsuit; *third,* that the Circuit Judge erred in his charge and also in his refusal to charge the jury. We will examine these grounds of appeal in their order.

The Circuit Judge allowed the plaintiff, Edward N. Jenkins, while on the witness stand, to detail the grounds upon which he had based his claim for damages by stating how he reached his conclusion that the defendant railway company had damaged him in the sum of $1,000 in refusing to award him, or rather in cancelling the contract for the con-

struction of the power house of defendant, and also in allow-
ing the same witness to detail the grounds whereon he
thought the defendant electric railway company had injured
him in the sum of $1,750 in cancelling the contract for build-
ing the car barn of defendant.   In his complaint, plaintiff
had, in effect, alleged that he was a contractor in the city of
Charleston, S. C., of experience, skill and responsibility; that
on the 13th day of February, 1897, the defendant electric car
company, a corporation under the laws of this State, offered
the contract of building the power house and the car barn
of the defendant company, according to certain plans and
specifications; that the plaintiff at its instance and request
put in his bid to do that work along with four other separate
contractors, and that in the preparation of plaintiff's said bid
he was subjected to labor and expense therefor; that on
Monday afternoon, the 15th day of February, 1897, at the
hour of 6 o'clock, and in the presence of all of said five con-
tractors, their respective bids were opened, and it was then
discovered and announced that the bids of the plaintiff for
the construction of each of the buildings were the lowest,
and that the defendant then announced that in a few days it
would communicate with the plaintiff touching said contract;
that on the 17th day of February, 1897, the defendant, by
letter, requested the plaintiff to call at its office on that day;
that the plaintiff did call, and then and there arranged with
the defendant that the 1st day of May, 1897, should be in-
serted in the contract as the day on which the plaintiff was
to complete the two buildings, and also that the demurage of
$25 inserted in the contract, should be changed to $50 per
day after 1st May, 1897, until contract should be completed;
that afterwards, but in the same interview, the defendant
insisted that plaintiff should obtain a bond of some solvent
surety company in the penal sum of $7,500 for the faithful
performance of said contract by the plaintiff; that although
no such stipulation or condition had ever been mentioned
before between the parties, yet he agreed, and went out to see
if he could arrange with some said company, and soon re-

turned to the defendant office with the information that the
American Surety Company—a corporation located in New
York city and which only issued policies or bonds from the
home office in New York city—would sign his bond or his
surety; that then this plaintiff's contract with the defendant
was complete; that notwithstanding it would take a reason-
able time to complete the bond, the defendant, through its
attorney, F. Moultrie Mordecai, Esq., when the plaintiff had
announced that he had made arrangements with the Charles-
ton agents and attorneys of the American Surety Company
for said bond, at once thereafter announced that said bond
should be filed with the defendant by 12 M. on the next day,
the 18th February, 1897, though afterwards this arrange-
ment was by the defendant extended to 6 o'clock of the
afternoon of the 18th February, 1897; that such condition
being impossible of performance for lack of reasonable time,
the defendant, in disregard of plaintiff's rights, awarded the
contract to the bidder next to the plaintiff in the lowest
amount bid.

The first and second exceptions, the two questions admit-
ted over defendant's objection were (1) "What was the dif-
ference between the cost of completing the contract
to you and the bid which you made to the company?"
(2) "When was the work finished by Mr. Oliver?"
Great care is observed in the Courts to prevent any testimony
relating to breaches of contracts, when such testimony is
speculative and uncertain in its character. And this is en-
tirely proper. Witnesses should always, when they can do
so, speak from direct knowledge. The very best that any
witness can do is to detail facts. It seems to us that a man
who has devoted his life in acquiring the mastery over these
classes of knowledge which enter in to make a contractor,
may be said to have the power to make estimates of the cost
of a proposed building, so that he can announce the cost of
such building. This witness testified that he had estimates
made by experienced subcontractors of much of the work.
This being so, we do not see why his testimony was not

admissible. *Feaster* v. *Richland Cotton Mills,* 51 S. C., 143, is a very good illustration of this doctrine. So, too, *Moorer* v. *Andrews,* 39 S. C., 427, where a man was allowed to recover the difference between the market price of certain cords of wood, thirty-six cords, and what those thirty-six cords would have cost to render them marketable. Is this not the same principle? But apart from all this in the case at bar, the witness, H. F. Zacharia, testified, without any objection thereto, to the same matters covered by plaintiff's testimony on this point. Now, as to the second question, relating as it does to the time employed by Mr. Oliver in completing these buildings, we can see no harm to the defendant from any answer to this question. Possibly it might seem to develop some hypocricy in the defendant, if any such existed, as to the deep anxiety, professed by the defendant, to have the work finished by the 1st May, 1897, when it was shown that such work was not actually finished until *1st July, 1897, and no-complaint was ever made by it.* These exceptions are overruled.

The third ground of complaint urged by the defendant against the rulings of the Circuit Judge relate to his declining to grant the defendant's motion for nonsuit. The rule governing nonsuits is so well settled that no extended reference to the rule in the abstract is necessary.

Was there any material testimony bearing on the issues developed by the pleadings in the case at bar? The Circuit Judge decided that there was such testimony. We agree with him. The contract was in issue. There was testimony bearing on it. The breach of the contract was in issue, and there was testimony bearing on that issue. There was some testimony relating to the amount of damages resulting from the breach of the contract. These things being true, the nonsuit would have been highly improper by the Circuit Judge.

We will now pass upon the *sixth* and *eighth* grounds of appeal together, as they relate to the same matter. "Sixth. Because his Honor erred in charging the jury as follows:

'Next you would consider the claim of the plaintiff, that he lost the profits on his contract by reason of the breach by the defendant. When a man makes a contract with another, he is entitled to the benefits of that contract, and if one of the benefits is a certain amount of profit, he is entitled to receive that benefit. If the other side violates the contract and deprives him of that benefit, along with others, he is entitled to recover the amount of such profits from the party violating the contract.' But should have charged the jury that the profits in an action of this kind could not be recovered. Eighth. Because his Honor erred in refusing to charge the fifth request of the defendant, which reads as follows: 'The profits which might have resulted from a building contract upon which no work has been done, cannot be considered as an element of damages, as the same are too vague and speculative.'" It seems to us, if the testimony established the existence of a contract between these litigants, and, further, that there was testimony that the defendant made a breach of said contract, and, also, that there was testimony that such a breach of said contract was the direct cause of damages to the plaintiff, which said damage could be estimated in dollars and cents, then it was proper for the Circuit Judge to submit such questions to the jury. We cannot, as a Court, consider whether the jury allowed too much money to the plaintiff for defendant's alleged wrongdoing. The case shows that this question was not presented to the Circuit Judge in a motion for a new trial on the ground of excessive damages. For the Circuit Judge to have charged the fifth request, embodied in the eighth ground of appeal, would have required that he charge the jury that no work on the contract had been done by the plaintiff. As our views have been expressed on this matter in our consideration of the first and second grounds of appeal, we will not linger here. These exceptions are overruled.

We will next consider the remaining exceptions in one group, relating as they do to an alleged violation by the Cir-

cuit Judge of the Constitution, which forbids a Circuit Judge to charge the jury upon the facts, namely: "Fourth. Because his Honor erred in charging the jury as follows: 'And so, if you find from the testimony that the defendant did impose upon him the additional condition that he should give bond in a surety company, and that he proposed to give a bond in a certain surety company which was acceptable to the defendant, and with which proposition it signified its satisfaction and acceptance, then the plaintiff was entitled to a reasonable time within which to comply with the condition by giving bond; and if you should find from the testimony that the surety company in which he proposed to give his bond, and in which the defendant street railway company agreed to accept his bond, was not in the city of Charleston, but was at a distance from the city, then it would be a matter for you to consider as to what would be a reasonable time within which the plaintiff could comply with the condition thus fixed, and give the bond in that company—the company which had been tendered and accepted as his surety by the defendant.' As in so charging, his Honor, the Circuit Judge, charged the jury in respect to a material question of fact in the case, in violation of sec. 26, of art. V., of the Constitution of this State. Fifth. Because his Honor erred in charging the jury as follows: 'And if you should find further from the testimony that the defendant prevented, by curtailing the time within which he was to give bond to such an extent as that it didn't allow him a reasonable time, and that it thus prevented his giving bond and complying with that condition, then the plaintiff would still have the right to insist that because of the wrongful interference of the defendant, he had been prevented from complying with that condition, and to insist that his contract should be accepted and complied with on the other side, or that the other side should make him just compensation for its breach of contract.' As in so charging his Honor, the Circuit Judge, charged the jury in respect to a material question of fact in

the case, in violation of sec. 26, of art. V., of the Constitution of this State. Seventh. Because his Honor erred in charging the jury as follows: 'In other words, to express it more definite, Mr. Foreman, that Mr. A., we will say, had agreed to furnish so many thousand bricks at certain figures, and that Mr. A. was a reliable man, able to perform his contract, or able to respond in damages for the breach of his contract. And that Mr. B. had promised to furnish lime and cement; or that Mr. A. and Mr. B. were selling these articles at that price, and that this plaintiff was able to buy these articles at the price himself.' As in so charging, his Honor, the Circuit Judge, charged the jury in respect to a material question of fact in the case, in violation of sec. 26, of art. V., of the Constitution of this State. Ninth. Because his Honor erred in charging the fourth request to charge of the defendant, erred in qualifying same and charging the jury as follows: 'That must be qualified, Mr. Foreman and gentlemen. A person who fails to do these things of his own motion or of his own fault, cannot maintain such an action; but a person placed in that position, and who fails to perform these conditions of executing or furnishing a bond and executing a contract because of the unlawful and unreasonable interference of the other side, still has the right to insist, either upon the performance of his contract or to recover compensation from the other side for the breach of contract.' As in so charging, his Honor, the Circuit Judge, charged the jury in respect to a material question of fact in the case, in violation of sec. 26, of art. V., of the Constitution of this State."

(a) We will first consider fourth and fifth exceptions. Our Constitution does state this negation of power in the Circuit Judge: Art. V., sec. 26: "Judges shall not charge juries in respect to matters of fact, but shall declare the law." Here it is evident that the Circuit Judge can no longer state the testimony. In *Norris* v. *Clinkscales,* 47 S. C., 488, which was decided in October, 1896, the acting Justice of this Court—Judge Benet—with a great deal of care and

ability reviewed most of the cases on the subject of the charge of the presiding Judge to the jury, with reference to the provision of the Constitution of 1868 on this matter, and traced the result wrought by the art. V., sec. 26, of the Constitution of 1895.    He deduced certain rules on this subject, in these words: "And any direct reference to the testimony in charging a jury; any expression as to what is in evidence; any remark that would amount to a stating of the testimony, in whole or in part, is absolutely prohibited.    At the same time, we cannot presume that it was the intention of the framers of the new Constitution (many of whom were members of the bar and learned in the law, and familiar with the decisions of this Court) to require trial Judges in their charges to declare the law, and yet forbid them to base that law upon any foundation, by which alone they can make it apply to a given case.    The constitutional mandate is that 'they shall declare the law' * * * now it must be found solely in the latter—a *supposed state of facts* (italics ours).    We, therefore, conclude and hold that as it would be impossible to declare the law applicable to a case on trial without connecting the legal principles involved with some state of facts, actual or hypothetical, it was the intention of the framers of the new Constitution, in amending sec. 26, of art. V. (Constitution of 1868), that the trial Judge in charging the law of the case should lay before the jury that law as applicable to a supposed state of facts, but that in so doing he should carefully avoid repeating the evidence on the facts at issue, making no statement of the testimony either in whole or in part.    We are clearly of the opinion that under section 26, as it now reads, a Judge may, in declaring the law applicable to the case, base that law upon hypothetical findings of fact by the jury, and instruct the jury that if they believe so and so from the evidence they have heard, then such and such will be the result.    In so doing, if he be careful not to repeat any of the testimony, nor intimate directly or indirectly what is in evidence, he will be chargeable neither with stating the testimony nor

with charging with respect to matters of fact." There was no issue between these parties litigant that a bond was required by the defendant in a surety company, and that the American Surety Company was that company. The pleadings and correspondence on both sides show this. Then, where was it illegal in the Circuit Judge declaring the law in the hypothetical case set up in these two grounds of appeal? Let the exceptions be overruled.

We overrule the seventh ground of appeal for the reason that upon its face it appears that the law declared was based upon a purely hypothetical case.

As to the last exception, ninth, we will say that the defendant had requested the presiding Judge to charge as follows: "4th. The lowest bidder for the construction of a building, who fails to execute a bond or sign a contract therefor, as he understood he was to do, cannot maintain an action for damages for breach of contract based upon his bid." Now, the defendant in his request to charge embodied a hypothetical case. All that the Circuit Judge did was to properly modify the proposition of law submitted by the defendant. The Circuit Judge did not quote any testimony nor state any testimony. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.