8963

GADSDEN v. WESTSHORE INVESTMENT CO.

(82 S. E. 1052.)

TAX SALES. EXECUTION AGAINST LANDS OF UNKNOWN OWNERS. POSSESSION. TAX DEEDS.

1. TAXATION—TAX TITLES—PRESUMPTION AS TO VALIDITY.—A tax title is presumed to be good, and the burden is upon the party attacking it to show a defect.

2. EVIDENCE—PRESUMPTIONS—TAX TITLES—VALIDITY.—Under the act of 1889 (Act Dec. 23, 1889 [20 Stat. at Large, p. 345]), authorizing the sinking fund commissioners to have lands, which for 10 years had been on neither the tax duplicates nor the forfeited land list, surveyed and placed upon the tax duplicate in the owner's name or in the name of "unknown," if the owner's name was not known, where adjoining tracts separately owned were assessed together against "unknown" and sold as one tract, a presumption arose that the taxing officers did not know that they were separate tracts.

3. TAXATION—TAX SALES—ASSESSMENT AND SALE OF SEPARATE TRACTS JOINTLY.—Under such statute, where there was no line of demarcation between two tracts, a tax sale was not invalid because they were assessed against "unknown," levied upon, advertised, and sold as one tract.

4. TAXATION — TAX SALES — IRREGULARITIES. — Under such act, where tracts were assessed upon the tax books against "unknown" and sold by the sheriff, the bid paid, and a receipt given by the sheriff in 1890, they were thereafter listed in the name of the purchaser, and the taxes paid for 23 years, and in 1913 the successor of the sheriff who made the sale executed a deed to the purchaser, there were no fatal irregularities defeating the purchaser's title.

5. ADVERSE POSSESSION—PAYMENT OF TAXES AS EVIDENCE OF TITLE.—The payment of taxes is not evidence of title, but the failure to pay is evidence that no claim was made.

6. Where lands have been sold by the sheriff under a tax execution there is a presumption that he took possession thereof when he levied under the tax execution.

7. Under Civil Code 1912, sec. 1191, a successor to a sheriff who made a sale under a tax execution may at any time thereafter make a deed to the purchaser evidencing such sale.

Before MEMMINGER, J., Charleston, January, 1914. Affirmed.

Action for specific performance of contract for sale of lands, bought by Helen T. Gadsden, against Westshore Investment Company. From a decree for plaintiff, defendant appeals. The facts are stated in the decree and opinion.

The Circuit decree was as follows:

"In this case the parties submit a controversy as to whether or not plaintiff has a good marketable title to certain marshlands in Charleston, which defendant shall be required to accept under its contract to purchase same.

Under the agreed statement, which is herewith filed as a part hereof, it appears that in 1890 it was learned by the tax officers that this property, measuring forty-four (44) acres, had been absolutely abandoned, and no taxes paid thereon for many years by any one. So, pursuant to the provisions of "An act in relation to abandoned lands," etc. (20 Stat. 347), it was listed as "unknown owner," and sold for taxes, according to law, the sheriff making levy thereon, pursuant to execution. Plaintiff's predecessor became the purchaser and paid the money and had the property properly listed in his name; and has paid taxes thereon ever since, but never received any deed therefor until recently, when the successor of the sheriff who had made the sale, pursuant to the provisions of section 1191, volume I, Code of 1912, made him a deed and delivered possession thereunder.

This deed so made, after twenty years after the sale, has not the duplicate execution and return attached, as required by law, but, by the agreed statement, it appears that this was no, and thus, its omission being re asonably accounted

for, this is not a material defect. As above stated, it is agreed in the statement that the sheriff did levy according to law under the execution, which means that he seized and took exclusive possession of the property.

In the deed to plaintiff's grantor the property is fully described as formerly two separate tracts of marshland; but it must be borne in mind that this deed was evidently carefully prepared more than twenty years after the advertisement and tax sale of the property as '44 acres unknown,' and there is nothing in the statement to show that the tax authorities knew at the time of the sale that the tract had, many years before, been two tracts belonging to different owners, or that it ever appeared on the tax books that way.

Objection is now interposed to the title on behalf of defendant, mainly upon this ground, of two tracts being listed and levied upon, and advertised and sold as one; the claim being, made, and carefully argued out, that this is material in invalidating the tax title, in that former owners were thereby given no notice of these proceedings, and that the tax authorities are required by law to list separate tracts separately and keep them separate throughout.

There would be force in this objection, perhaps, if it had appeared that the separate owners had been known; but, as above stated, the property was only marshland, covered by water at high tide, and susceptible, ordinarily, of no sort of actual occupancy, and was not in any sort of physical possession, and had been for many years absolutely left off the tax books, the chain of title lost; and, so, the tax authorities, proceeding under the power in them vested by the act as to abandoned lands, above referred to, came to this abandoned marshland, and having it measured off, found it to be forty-four (44) acres, owner or owners unknown, and it does not seem, so far as I can discover, that the law required them to go to work and trace back the title and list and levy and advertise the property as such separate tracts (if so discovered to be) formerly owned by such separate owners as the

records of the mesne conveyance office might disclose, to have had paper title to the property many years before. The act does not read that way, and I am sure the law does not require it.

It is true notice to the unknown owner was one of the objects contemplated by the act, but when it appears, as it does appear from the statement herein, that all that could have been discovered of the history of this property was that in 1817 (seventy-three years before it was listed and sold as unknown) part of it had stood in the name of one owner and part in the name of another, it does not seem that a separate listing as such would have been effective, nor the omission to do that material. Furthermore, the object contended for—to wit, notice to any possible claimant—was amply established by the levy of the sheriff under the execution, as said in *Dickson* v. *Burckmeyer,* 67 S. C. 539, 46 S. E. 343: 'The requirement' (referring to the requirement of the law that the sheriff, under a tax execution, shall seize and take exclusive possession) 'is one which greatly concerns the defaulting owner of the land, for the seizure and taking possession by the sheriff is a notorious act, which tends to give the defaulter and the community notice of the intended sale.' So, here, as it is agreed that the sheriff did so seize and actually possess the property, the very best sort of notice was afforded any one who might have a claim to it.

This matter of separate tracts being listed and advertised and sold as one, and as being immaterial in the particular case last cited at page 538, although there the owner was known, which is not as strong as this case, where the separation was not apparent by any mark or designation, and where the owner or owners were unknown, and the property abandoned marshland.

The other point urged against the title is the claim that plaintiff's grantor never got possession of the property, and

possession was not given by the sheriff, but only recently by the succeeding sheriff, who made the tax deed.

It is true, according to the statement, that there was no act of possession by plaintiff's grantor prior to this time, other than having the property listed as his upon the county and city books and paying taxes continuously (and it is argued on behalf of plaintiff that as to such water-covered lands, not usually susceptible of actual occupation, that payment of taxes is about the usual only act of assertion of possession), but I think it is clear that where the evidence shows, as here, that the sheriff duly took possession under the execution, that the possession of the sheriff would be presumed to continue until he turned it over to the purchaser with the deed or under it. Under the tax acts, deeds are not delivered by the sheriff at the time of the sale; there is an interval, and the sheriff having taken possession, and being in possession, at the time of the sale, would remain in possession during the interval. My idea is, that the sheriff having taken possession and made the sale and received the money and issued the receipt, would continue to be possessed until he made the deed or his successor made it, as here, and delivered the possession thereunder, unless there was a showing to the contrary, which there is not here. This view is warranted by the provisions of section 1191, above referred to as giving the power to the succeeding sheriff to make the deed, etc., in case his predecessor has failed or neglected to do so, and also by the case of *Kingman* v. *Glover,* 37 S. C. L. (3 Rich. Law) 27, which holds 'that a sheriff's conveyance to a purchaser many years after the sale puts the purchaser in the same condition he would have been had the title been executed contemporaneously with the sale.' And the agreed fact here that the sheriff took possession distinguishes this case from *Gardner* v. *Reedy,* 62 S. C. 503, 40 S. E. 947, wherein the fact was that the sheriff did not take possession.

In reaching the conclusions I have, of course, taken into consideration the statement at the top of page 5 of the agreed statement of facts, that 'until the execution of the above recited deed from Martin, sheriff, to Gadsden, there had been no actual possession of this property by any one;' but I take it that this refers to persons and is not intended to be a finding of fact in contradiction of and rebuttal of the recital in the advertisement by Ferguson, sheriff, that he had levied upon the property, and that the lost execution and return thereon would show such a levy.' I take it, that it is agreed that the advertisement, which is uncontradicted, states that there was a levy, and I think the presumption is that the levy was regular, which, under the law would be, that the sheriff seized and took exclusive possession.

Being satisfied, therefore, under the state of facts thus shown, that the plaintiff has a good and marketable title to the premises in question, it is hereby

Ordered, adjudged and decreed, that the defendant herein comply with its contract to purchase the said premises, upon the terms of said contract being complied with by said plaintiff."

*Messrs. Huger, Wilbur & Guerard,* for appellant, submit as to:

The invalidity of the tax sale:

(a) Two tracts belonging to different owners assessed, levied upon and sold as one tract.

(b) Statutory notice to defaulting taxpayers not given.

Certain fatal irregularities in the later sequence of events, with the result that the titles of the defaulting taxpayers were never divested:

(a) Purchaser acquired no deed and no possession.

(b) Title of a defaulting taxpayer is not divested till the consummation of the tax sale.

(c) A tax sale cannot be consummated twenty-one years after the bidding in of the defaulting taxpayer's property.

12—99

And cite: Civil Code 1912, secs. 393, 395, 397. *Distinguished:* 67 S. C. 526. *Title of purchaser consummated so as to divest title of former owners:* 44 S. C. 470; 37 Cyc. 1281, 1422; 1 Rich. Eq. 340.

*Messrs. von Kolnitz & von Kolnitz,* for respondent, cite: 20 Stats. 347; Civil Code 1912, sec. 105; 33 S. C. 164; 79 S. C. 514; 19 Stats. 862; 67 S. C. 533; Civil Code 1912, sec. 1191; 19 S. C. 337; 67 S. C. 533, and 3 Rich. 27; 31 S. C. 347; Code of 1902, 349. *Adverse possession under tax title as against former owners:* Code Civil Proc. 123. *Presumption of a grant to plaintiff:* 3 Strob. L. 498; 40 S. C. 168; 2 Mills 425; 2 Strob. L. 141; 2 Rich. L. 222; 11 Rich. L. 429; 14 S. C. 552. *Title vested in sheriff at time of levy under execution:* 3 Hill 289.

October 5, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The defendant herein made a contract to purchase from the plaintiff a tract of marshland. The defendant refused to comply with the contract, because one link in plaintiff's chain of title was a tax title and the defendant contends that the tax title is not valid under the statutes of this State. Under the statutes of this State a tax title is presumed to be good and the burden is upon the defendant to show the defect.

There was an agreed statement of facts.

The important facts are as follows:

In 1742 the land was granted by King George II to G. Guignard. Several successive conveyances in the first half of the 19th century were made by which the land was conveyed in part to Jonathan Lucas and in part to Thomas Gadsden. There were no further conveyances of record. The land was marshland and daily covered with tide water. The two tracts aggregated forty-four acres, but they

adjoined and there was no evidence of any dividing line between them.

In 1889 the legislature authorized the sinking fund commissioners to have surveyed any lands that they were informed or believed to have been continuously, for ten or more immediately preceding years, upon neither the Tax Duplicates, nor Forfeited Land List of this State, and, if after such survey, the said absence from said tax books be found to exist, to cause the said land to be placed upon the Tax Duplicate in the owner's name, if known, or in the name of "unknown," if the owner's name be not known, charged and taxed with the entire costs of the survey and investigation and fifty per cent. penalty additional thereto, and with the taxes for five years immediately preceding, and collect the same under existing law for collection of taxes.

In 1890 the two tracts were put on the tax books for Charleston county as follows: "Unknown Ashley River, 44 acres, assessed $100 from 1885." On June 6, 1890, the land was sold by Ferguson, sheriff, and bid in by Norman P. Gadsden, admr., the bid was paid and receipt was given by the sheriff. The sheriff did not make title, but the land was listed in the name of Gadsden, admr., and the taxes are paid thereon ever since. On 6th June, 1913, J. Elmore Martin, sheriff, as successor to Sheriff Ferguson, made the deed in question to Gadsden and he conveyed to the plaintiff. The case was heard by Judge Memminger, who declared the deed good and ordered compliance. There are several exceptions, but in argument the appellant takes three positions.

"The first three exceptions raise virtually the same issue and call in question the position taken by the Circuit Judge, that a presumption arises from the fact that the two tracts were merged and sold as one, that the tax authorities did not know that they were separate tracts." The statute says the lands are to be listed as "unknown" if the owner's name be not known. "Unknown" to whom?

Manifestly, unknown to the tax officers.    Under the statute the officers are to investigate and there is a presumption that public officers did their duty.    There is nothing to show that they did know, and his Honor correctly held under the agreed statement that they did not know.

The deed of Sheriff Martin described the tracts separately. This does not show that it was known at the time of the advertisement and sale.

"The tax sale is , invalid because two tracts belonging to different owners were assessed, levied on, advertised and sold as one tract."

There. is nothing in the case to show that there was any line of demarkation between the two tracts.    Title is traced by the names of the grantors and grantees.    The name being unknown, there was no means of knowing that the tracts were separate, even in title.    There was no separation in fact, and this position cannot be sustained.

"Assuming that every prerequisite to the tax sale had been in order, we submit that there were fatal irregularities in the after sequence of events, by reason of which the title of the defaulting owners was never divested."

It is said that there could be no actual possession of this marshland.    In that case, the defaulting taxpayer had no actual possession.    In 1890 the tax officials put this land on the tax books as land upon which taxes had not been paid in ten or more years.    The payment of taxes is not evidence of title, as is supposed in popular myth, but the failure to pay is evidence that no claim was made.    We have, then, that for thirty-three years neither Guignard nor Lucas, nor their heirs, have made any claim to the land. There 'is a presumption that Sheriff Ferguson took possession in 1890.    There is no evidence of a change in the status, except that Sheriff Martin put Norman Gadsden in possession in 1913 and made the deed as he was authorized to do.    The statute authorizes the

succeeding sheriff to make the deed, and there is no limit in the statute.

So far as the questions raised in this case, there was no error in the judgment appealed, and it is affirmed.

MR. JUSTICE GAGE, *concurring.* I concur in the opinion of Mr. Justice Fraser, except I think that the payment of taxes is competent testimony, in some cases, to prove title.

MR. JUSTICE HYDRICK concurs in the result.