16382

THIGPEN v. THIGPEN

(60 S. E. (2d) 621)

*Mr. John G. Dinkins,* of Manning, *for Appellant,*

*Messrs. James Hugh McFaddin* and *Fred Lesesne,* of Manning, *for Respondent,*

July 13, 1950.

OXNER, Justice.

This action was instituted in February, 1948, for the purpose of having a deed to a tract of land in Clarendon County containing approximately 100 acres, absolute in form, executed by respondent to appellant, his brother, on May 4, 1927, construed as a mortgage. Respondent alleged in his complaint that he was induced to sign this instrument by appellant's fraudulent representation that it was a mort-

gage. He also alleged that he received no consideration for said conveyance and that it was not witnessed as required by law. Appellant denied the material allegations of the complaint, set up title by adverse possession, and further alleged in his answer that respondent had not within ten years before the commencement of the action been seized or possessed of the premises and was, therefore, barred by the statute from bringing this action.

The case was tried at the March, 1949, term of the Court of Common Pleas for Clarendon County. Under issues framed by the Court, the jury found (1) that the instrument was not executed according to law, (2) that it was without consideration, (3) that it was intended as a mortgage, (4) that respondent was induced to sign same by fraudulent representations on the part of appellant, and (5) that appellant had not acquired title to said premises by adverse possession. A motion for a new trial made by appellant was overruled. Thereafter a decree was filed approving and adopting all findings of fact made by the jury and directing that an accounting be had between the parties. This appeal followed.

The first question for determination is whether the Court below erred in refusing a motion for a directed verdict made by appellant at the conclusion of the testimony on the ground that the proof was insufficient to support a finding that the parties intended that the deed should operate as a mortgage.

Appellant owned a tract of land containing approximately 122 acres adjacent to the 100-acre tract owned by respondent. Both tracts of land were originally parts of a 315-acre tract owned by their father. The two brothers were farmers of limited education. Respondent said that he never went beyond the second grade in school and was scarcely able to either read or write. On June 18, 1925, respondent mortgaged his tract of land to the Federal Land Bank for $1,400.00 and on the same day appellant mortgaged his tract of land for $2,000.00 to the same institution.

In April, 1927, respondent became in urgent need of funds for the purpose of discharging an indebtedness amounting to approximately $500.00 incurred to the South Carolina Agricultural Loan Association in 1926. He was unable to borrow the money and approached his brother for aid. Appellant was not in a position to render financial assistance and the two brothers then went to see one D. N. Baker, who lived in that community, and asked if he would make a loan secured by a second mortgage on respondent's tract of land. Baker declined to do so but indicated that he would make a loan to respondent if the parties would secure same by a second mortgage on both tracts of land. According to respondent, appellant agreed to this arrangement. A few days later, on May 4, 1927, the instrument in controversy, an absolute conveyance, by respondent to appellant of the 100-acre tract, was executed. The only consideration stated in the deed is $5.00. No reference was made therein to the mortgage held by the Federal Land Bank. On the same day appellant executed to Baker a note for $750.00, secured by a mortgage covering both tracts of land. Both the deed and mortgage were recorded on the following day in the office of the Clerk of Court. The deed was executed and the dower thereon renounced at the residence of appellant. Respondent and his wife testified that both appellant and the notary public who probated the affidavit on the deed and took the renunciation of dower represented to them that this instrument was a second mortgage on respondent's tract of land. Respondent said that a sale of his property was never discussed; that no mention was ever made of a deed; that no money was ever paid to him; and that he executed the instrument solely for the purpose of borrowing funds to discharge his indebtedness to the Agricultural Loan Association.

Appellant testified that his brother came to him stating that he was in serious trouble on account of disposing of property mortgaged to the Agricultural Loan Association and that it was necessary for him to pay within a few days

a fine imposed upon him in the Court of General Sessions for Clarendon County; and that he thereupon took his brother to see Baker who declined to make a loan secured by a second mortgage on the 100-acre tract. Appellant's version of what then transpired is as follows: "We still didn't know what to do and he (respondent) asked me about putting up both tracts if he would deed me his, he said it was the worth of it anyway. The Federal Land Bank mortgage and this trouble he was in, was the value of the place, and he didn't have a chance and he would deed me the place if I would put up both the places and borrow the money, and that is what we did." Appellant further testified that he did not wish to buy the property as he could have bought similar property in that community much cheaper and that his sole motive was to assist his brother. He said that approximately $500.00 of the proceeds of the loan was paid to the Clerk of Court of Clarendon County to satisfy his brother's indebtedness to the Agricultural Loan Association and the balance of approximately $250.00 was paid to his brother in cash. He stated that there was also paid to respondent the sum of $5.00 named as the consideration in the deed. (As previously stated, respondent denied that any money was paid to him in the transaction.)

After executing the above deed in 1927, respondent remained on the premises for three years. During that time he said that he continued to operate the farm as had been previously done, without any demand or request for the payment of rent; and that he paid to appellant from the income on the farm the sum of $280.00 to be applied on the second mortgage which he thought appellant held. Appellant denied receiving the $280.00 payment and said that during the three-year period respondent operated the farm as his sharecropper. The property was returned for taxation in 1927, 1928 and 1929 in the name of respondent. These taxes went into execution and were paid by appellant some time later. Respondent testified that at the expiration of this three-year period, he left the premises under an agreement

that appellant would manage the farm and use the income therefrom to pay the taxes and discharge the mortgage indebtedness thereon, when the property would be returned to respondent. Appellant denied making this agreement. Respondent remained away from the premises for a period of nine years, during which time he farmed at various places. He then returned to this farm and operated it as appellant's sharecropper through the year 1947. The property was returned for taxation from 1930 to 1948 in the name of appellant and the taxes were paid by him. During 1947 a disagreement arose between the parties as to the disposition and division of the produce, thereby terminating the friendly relationship which had always existed between these two brothers. During the fall of that year respondent learned that appellant was cutting timber on the premises and objected to his doing so. Appellant replied that he had a deed to the property and, therefore, had a right to cut the timber. Respondent asked to see the deed and was told that it was recorded. Shortly thereafter respondent went to the office of the Clerk of Court where he says he first discovered that the instrument which he thought was a mortgage was an absolute deed. A few months later this action was instituted.

It appears that appellant paid the Baker mortgage and the remaining installments on the mortgage given by respondent to the Federal Land Bank. The Baker mortgage was satisfied in 1943 and the Land Bank mortgage in 1944. Respondent offered testimony to the effect that the tract of land involved in this controversy is now worth at least $10,000.00 but his testimony as to its value at the time the deed was executed is rather vague. Appellant's testimony tended to show that at the time the deed was executed, the value did not exceed the amount due on the Federal Land Bank mortgage and the loan made by Baker.

Several witnesses for respondent testified that prior to the institution of this action, appellant stated to them that he held a second mortgage on the 100-acre tract of land.

This is an equity case. The jury found that the instrument in controversy was procured by fraud and was intended to operate as a mortgage of the real estate described therein. The trial Judge concurred in and adopted these findings of fact. Hence, they are not subject to review by this Court. Article 5, Section 4 of the Constitution: *Carmichael et al. v. Carmichael et al.,* 110 S. C. 357, 96 S. E. 526; *Aiken Petroleum Co. v. National Petroleum Underwriters of Western Millers Mutual Fire Insurance Co.,* 207 S. C. 236, 36 S. E. (2d) 380, and coses therein cited. The limit of our inquiry is whether there is any evidence reasonably supporting the conclusion reached by the jury. *Brown v. Volunteer State Life Insurance Co.,* 212 S. C., 537, 48 S. E. (2d) 507. There is a sharp conflict in the testimony. We think that offered by respondent, which the jury evidently accepted, was sufficient to support the facts found.

We shall next consider appellant's contention that the Court erred in submitting under the circumstances hereinafter mentioned the issue of adverse possession. At the conclusion of the testimony, the jury was excused and the Court proceeded to discuss with counsel the issues to be submitted. During this discussion appellant's counsel asked for a peremptory instruction to the effect that the evidence was insufficient to support a finding that the instrument was intended as a mortgage. This request was refused. At the suggestion of the Court, it was then agreed that the following questions should be submitted to the jury:

"I. Was the instrument claimed by the Defendant, James E. Thigpen, to have been executed to him by the Plaintiff, E. L. Thigpen, in this case, on May 4, 1927, executed according to law?

"II. Was there a valid consideration for said instrument?

"III. Was said instrument intended as security for a debt and to operate as a mortgage of the real estate therein described?

"IV. Was the Plaintiff, E. L. Thigpen, induced to sign the said instrument by reason of misrepresentation, deceit and fraud on the part of the Defendant, James E. Thigpen?"

These questions were read by the Court to the jury before counsel commenced their arguments. One of respondent's attorneys in the closing argument discussed at length, without objection, the question of adverse possession, stressing the fact that appellant's counsel had abandoned this defense. At the conclusion of the arguments the jury was excused and the following occurred:

"The Court: Gentlemen, it would appear to me in order to settle this case finally we will have to have some understanding as to how we will dispose of these questions as to adverse possession. Of course you are the moving party, Mr. Dinkings, in that regard.

"Mr. Dinkins: It looks like now I am in a position I will have to ask your Honor to submit that question to the jury. I was adhering to the four questions we submitted, but my friend made that argument.

"The Court: Do you want that question answered?

"Mr. Dinkins: It seems to me like I would have to do that now.

"The Court: I think unless you want to submit that to the presiding Judge or to refer it that is a jury question as much as any of these others. Now, the question of accounting can be attended to by the Referee. Now, what question shall (we) submit to them on the adverse possession business.

"Mr. McFaddin: Does the defendant own the land by adverse possession, it seems to me.

"The Court: Did the defendant J. E. Thigpen acquire title to the real estate described in the complaint by adverse possession, would that be sufficient?

"Mr. McFaddin: Yes, sir.

"Mr. Dinkins: Yes, sir."

In accordance with the foregoing agreement, the Court submitted to the jury in addition to the four questions heretofore mentioned, the following: "Did the defendant, J. E. Thigpen, acquire title to the real estate described in the complaint by adverse possession?"

It clearly appears that appellant's counsel acquiesced in the submission of the fifth question relating to adverse possession, and, therefore, is not now in a position to complain. If he desired to argue this question to the jury, he should have requested the Court to reopen the arguments so as to afford him that opportunity.

There are a number of exceptions to the charge. The only error complained of which has given us serious concern, and it seems to be the one principally stressed by appellant's counsel, is the instruction relating to the degree of proof necessary to establish that the conveyance was intended as a mortgage. It is claimed that the instructions given were inconsistent and constituted reversible error. In the general charge the jury was instructed that the burden was upon respondent to establish the first four issues "by the preponderance or greater weight of the evidence." This was correct as to the first two issues but a higher degree of proof was required as to the third and fourth issues. It was incumbent upon respondent to prove that the conveyance was intendel to operate as a mortgage by clear, unequivocal and convincing evidence. At the conclusion of the charge, the trial Judge inquired of counsel whether he had "overlooked anything that you want to call to my attention." Appellant's counsel thereupon called the Court's attention to his requests to charge. After remarking that he thought he had already "charged about the same thing", the trial Judge gave all of the requested instructions. Request No. 1 was as follows: "I charge you that a deed absolute on its face is presumed to be an absolute conveyance of the land described therein and to overcome this presumption, and establish its character as a mortgage, the evidence must be clear, unequivocal and

convincing, for otherwise the natural presumption will prevail." A portion of request No. 3 was to the same effect.

While the question is not free from difficulty, we do not think that the circumstances warrant a reversal. We are quite sure that the able trial Judge, with his long experience, was fully familiar with the degree of proof required in cases of this kind but inadvertently overlooked this feature in his general charge. Evidently appellant's counsel noticed this oversight but thought his requests were entirely sufficient to correct the error. In asking the Court to charge these requests, there was no suggestion that they were inconsistent with what had already been charged. If counsel felt that the jury's attention should have been specifically directed to the error in the general charge wherein the preponderance rule was stated, or that otherwise further clarification was necessary, he should have made known that fact to the Court. Much emphasis is placed on the Court's comments on the requests to charge to the effect that he had already "charged about the same thing" and that the requests were "in line with what I have already charged you", but the trial Judge was then evidently referring to certain other principles in the requests which, in fact, had already been charged.

It is true that the giving of conflicting instructions ordinarily constitutes reversible error because it is impossible for the jury to decide which should be accepted, and after the verdict of the jury, it is equally impossible for the Court to determine which the jury followed and which they ignored. *Citizens Bank of Darlington v. McDonald et al.*, 202 S. C. 244, 24 S. E. (2d) 369. But under the exceptional circumstances presented in the instant case, we are satisfied that the jury was not misled and that the confusion now complained of by appellant should have been called to the Court's attention.

> Errors also are assigned in the failure of the Court to charge various principles which appellant contends were applicable to the issues. If appellant desired a

more detailed charge or further instructions covering special features of the case not mentioned in the general charge, requests to this effect should have been submitted or the omission should have been called to the attention of the Court. *Williams v. Southeastern Life Insurance Co.,* 197 S. C. 171, 14 S. E. (2d) 895; *Coleman v. Lurey,* 199 S. C. 442, 20 S. E. (2d) 65; *South Carolina Power Co. v. Baker,* 212 S. C. 358, 46 S. E. (2d) 278.

The only other question raised by the exceptions is that the Court erred in not granting appellant's motion for a new trial on the ground of after discovered evidence. The evidence referred to consisted of a judgment roll in the office of the Clerk of Court for Clarendon County, properly indexed and filed, which disclosed that the South Carolina Agricultural Loan Association brought suit against respondent on a note in the sum of $450.00, secured by a chattel mortgage, wherein it was alleged that respondent had disposed of the crops in violation of the statute, rendering him subject to arrest. Judgment by default for $515.30 was entered on March 7, 1927, and was paid to and satisfied by the sheriff on May 5, 1927, the same day the instrument in controversy was recorded. According to the affidavit of appellant's counsel, he was informed by his client that the above transaction resulted in a criminal prosecution, and, accordingly, he examined the criminal dockets in the office of the Clerk of Court of Clarendon County and several adjoining counties but it never occurred to him to examine the civil dockets. It was through this erroneous impression that he did not discover this judgment roll until after the trial. The Court below held that this evidence was not material to the main issue; that if presented at another trial it would not change the result; and that the same could have been discovered before trial by the exercise of due diligence.

A motion of this kind is largely addressed to the sound discretion of the trial Judge. *Edwards v. Cottingham,* 171 S. C. 131, 171 S. E. 621; *Johnston v. Belk-McKnight Co.,* 188 S. C. 149, 198 S. E. 395. We find

no abuse of discretion on the part of the trial Judge in denying this motion. In fact, we think his discretion was wisely exercised.

The decree of the Court below is affirmed and the case is remanded for the purpose of an accounting between the parties.

FISHBURNE, STUKES and TAYLOR, JJ., and E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.

BAKER, C. J., not participating.