16511

HARRELSON v. REAVES ET AL.

(65 S. E. (2d) 478)

Messrs. *Eugene Hinson* and *James C. Hooks,* of Mullins, and *L. B. Dawes,* of Loris, *for Appellants,*

Messrs. *William B. James,* of Sumter, and *Richard E. Fields,* of Charleston, *for Respondents,*

.June 5, 1951.

Oxner, Justice.

Dr. W. L. Reaves died on September 1, 1945. He left a will wherein he directed that his property be equally divided between his widow, Mrs. Leona P. Reaves, and his two daughters, Mrs. Grace R. Harrelson and Mrs. Hazel R. Rogers. This action was brought on November 25, 1946, by one of the daughters against her mother and sister to partition the real estate. On March 7, 1947, Henry C. Reaves was allowed to intervene as a party defendant. He duly filed an answer claiming title by adverse possession to a small portion of the large tract of land sought to be partitioned. Counsel agreed to an order of reference on all issues in the case except the claim made by Henry C. Reaves. That question was tried at the November, 1947, term of the Court of Common Pleas for Marion County and resulted in a verdict in his favor for the land in dispute.

At appropriate stages of the trial, counsel for the widow and two daughters, who held the record title to the land claimed by Henry C. Reaves, moved for a nonsuit, a directed verdict and for judgment *non obstante veredicto*. All of these motions were refused. From the judgment entered on the verdict of the jury, this appeal followed. The exceptions relate to the sufficiency of the evidence to sustain the claim of adverse possession and to the charge of the presiding Judge.

It appears that Dr. Reaves, in addition to practicing medicine, owned and operated a twelve or fourteen horse farm in Marion County. Respondent Henry C. Reaves, a Negro reared by the Reaves family, was born on this farm about 1891 and has since resided there. When a young boy he stayed in the home of Dr. Reaves and his mother. Dr. Reaves

was then unmarried. The mother died about 1905. For three or four years prior to her death, she was a helpless paralytic. During this period Henry waited on her, sleeping in the same room, and did the cooking, washing and ironing. He received no compensation except his clothes and food.

Dr. Reaves married in 1914. About this time, Henry, who had then reached manhood, claims that Dr. Reaves gave him ten acres of woodland which was later cut off from the rest of the farm by a ditch around the entire ten acre tract. Three or four acres were cleared and the timber cut therefrom used to build a house which Henry says cost him five or six hundred dollars. He has since continuously lived in this house. Subsequently a few more acres were cleared and three or four other houses erected at a cost of approximatly $400.00 each. These houses were constructed by Henry at odd times with the voluntary assistance of several others on the farm. After moving on the ten acre tract, Henry continued to work for Dr. Reaves first as a common laborer and later cultivated about thirty acres as a sharecropper. However, he never sharecropped any portion of the ten acre tract but retained all crops grown thereon. There is abundant testimony to the effect that for more than thirty years Henry has been in exclusive possession of the ten acre tract, using it as his own property, without any demand for rent or other compensation. One of the houses constructed on this tract was torn down by him without consultation with or objection by Dr. Reaves.

One of the white sharecroppers who worked for Dr. Reaves from 1904 to 1913 and from 1915 to 1926, testified that Dr. Reaves stated to him shortly after his return to the farm in 1915, that he had given the ten acre tract to Henry "for waiting on his mother". This witness further testified that the ten acre tract was considered as belonging to Henry. Of course, Henry was not permitted to testify as to any conversation had with Dr. Reaves.

The foregoing summary has been taken from the testimony offered by respondent. The testimony of appellants tended to show that Henry occupied the ten acre tract as a laborer or sharecropper and that the timber used in the construction of the houses thereon was cut from various portions of the farm owned by Dr. Reaves, who also furnished part of the labor. There was other testimony by appellants to the effect that the ten acre tract was included in a plat of approximately three hundred acres which Dr. Reaves had made in 1933; that several mortgages given by him in 1934 included this tract; that a right-of-way through this property was given by Dr. Reaves to the highway department in 1937; that a fire insurance policy taken out by Dr. Reaves in 1938 covered, among other buildings, the house occupied by Henry; and that Henry never returned the ten acre tract for taxation or paid any taxes thereon.

We shall first determine whether the evidence was sufficient to warrant submission of the case to the jury. In approaching a consideration of this question, it should be kept in mind that this is not an action to establish and enforce a parol gift of land. We had occasion to consider that subject in the recent case of *Knight et al. v. Stroud et al.*, 214 S. C. 437, 53 S. E. (2d) 72. The basis of respondent's claim is that there was a parol gift of the ten acre tract which ripened into title by adverse possession.

It is well established in this state that a parol gift of land may ripen into title where accompanied by actual possession for the statutory period, with claim of ownership, and under such a gift the donee's possession is adverse from its inception. *Sumner v. Murphy*, 2 Hill 488, 27 Am. Dec. 397; *McElwee v. Martin*, 2 Hill 496; *Golson v. Hook*, 4 Strob. 23; *Harvey v. Harvey*, 26 S. C. 608, 2 S. E. 3; *Lyles v. Fellers*, 138 S. C. 31, 136 S. E. 13, 18. The authorities elsewhere are generally to the same effect. 1 Am. Jur., Adverse Possession, Section 49; 2 C. J. S., Adverse Possession, §§ 75 and 90. In *Lyles v. Fellers, supra,* the Court said: "A parol gift is insufficient without adverse

possession for 10 years. Person taking possession of land under a parol gift and thenceforward, holding it adversely for 10 years, acquires title to the same."

An entry under a parol gift of land, though permissive and friendly in the popular sense, is hostile to and adverse to the paper title in the legal sense, because there is an assertion of ownership in the occupant. The same principle was stated in one of ·the syllabi in *Sumner v. Murphy, supra,* as follows: "The possession of a son, under a parol gift from his father, will confer title under the statute of limitations; and although this possession was permissive, that is, by the consent of the donor, and might have been ended by him at any time before the statute ran out, yet after that time, he cannot defeat it."

Considering the evidence, as we must, in the light most favorable to respondent, we think it is clear under the above authorities that the Court properly refused appellants' motions for a nonsuit and directed verdict and the motion for judgment *non obstante veredicto.* While the evidence is conflicting, there is abundant evidence reasonably warranting the conclusion that respondent entered into possession of the ten acre tract under a parol gift from Dr. Reaves and has since been in open, continuous and exclusive possession, under claim of ownership, for a period of more than thirty years, during which time he made substantial improvements on the property. Appellants vigorously assert that respondent occupied the premises as a laborer or sharecropper but there is evidence to the contrary, and it was for the jury to determine the character of respondent's possession. The following language of the Court in *Lyles v. Fellers, supra,* is applicable·here: "In this case the plaintiff bases her claim on a parol gift of the land and possession thereunder for the statutory period. Under the well-settled rule in this state, this makes a question for the jury. It was for the jury to say whether or not there was a parol gift, and whether or not the plaintiff went into pos-

session under the gift, and whether the plaintiff had acquired title by adverse possession."

We now turn to the exceptions imputing error in refusing appellants' motion for a new trial. One of the grounds was that the verdict was contrary to the law and the evidence. The views heretofore expressed show that this contention is clearly untenable. The other exceptions relate to the charge of the presiding Judge.

It is contended that the following instruction constituted a charge on the facts and stated an incorrect principle of law: "I charge you that a person in order to prove title does not have to show the payment of taxes on the land that he claimed; that is not a prerequisite." We think this instruction was correct as far as it went. It is said in 1 Am. Jur., Adverse Possession, Section 245: "In the absence of a statutory requirement to that effect, however, it is not incumbent on one who claims title to land by virtue of an adverse possession thereof for the limitation period, to prove the payment of the taxes." Of course, the failure to pay taxes may be regarded as a circumstance "that weakens a claim of ownership". 2 C. J. S., Adverse Possession, § 178(a). Or, as stated in *Gadsden v. West Shore Investment Co.*, 99 S. C. 172, 82 S. E. 1052, 1053, the failure to pay taxes "is evidence that no claim was made." But if counsel desired instructions covering this phase of the matter, this fact should have been brought to the attention of the court. *Thigpen v. Thigpen*, 217 S. C. 322, 60 S. E. (2d) 621, and cases therein cited. We fail to see any basis for the contention that the instruction under consideration constituted a charge on the facts.

It is further contended that certain other portions of the charge contained hypothetical illustrations constituting a charge on the facts, "for the reason that the illustrations were directly applicable to the facts in the cause and constituted a charge thereon, and said illustrations did not fully set forth the law as to adverse possession."

The instructions complained of under the foregoing exception are rather lengthy and it would unduly prolong this opinion to incorporate them here. The complaint that they do not "fully set forth the law as to adverse possession" is entirely too general. After careful consideration, we are satisfied that these instructions do not infringe upon the facts. The Court merely used said hypothetical statements in an effort to clarify the applicable law without expressing or intimating any opinion as to the weight of the evidence. This is permissible. *Norris v. Clinkscales,* 47 S. C. 488, 25 S. E. 797; *Jenkins v. Charleston Street Railway Co.,* 58 S. C. 373, 36 S. E. 703; *Battle v. DeVane,* 140 S. C. 305, 138 S. E. 821. Moreover, it has been held "that a charge stating the legal conclusions which would result from the establishment of certain facts is not necessarily subject to objection as a charge on the facts, or as assuming the truth of the facts as stated." *Williams v. Southeastern Life Insurance Co.,* 197 S. C. 171, 14 S. E. (2d) 895, 897.

All exceptions are overruled and the judgment below affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.